Milton WINITZ, Plaintiff,

v.

S. Allan KLINE, Vivonex Corporation, a Delaware corporation, Defendants.

Court of Chancery of Delaware, New Castle.

April 21, 1971.

---

Clyde M. England, Jr., and Courtney H. Cummings, Jr., of Killoran & Van Brunt, Wilmington, and Robert J. Nicol, of Valicenti, Leighton, Reid & Pine, New York City, for plaintiff.

Edmund N. Carpenter, II, of Richards, Layton & Finger, Wilmington, for Vivonex Corp.

Steven J. Rothschild, of Prickett, Ward, Burt & Sanders, Wilmington, and Cole & Groner, Washington, D. C., for S. Allan Kline.

DUFFY, Chancellor:

This is the decision on (a) a motion by a defendant to quash an order of sequestra-

tion on the ground that the stock seized is the property of a voting trust and not his property; and (b) plaintiff's motion for a default judgment against the moving defendant.

## A.

Milton Winitz (plaintiff) is seeking an order for specific performance of a contract to which he is a party with S. Allan Kline and Vivonex Corporation, a Delaware corporation (defendants). Plaintiff alleges that he is entitled to but has not received a 2½% equity interest in Vivonex.[1] Kline is a nonresident of Delaware and an order of sequestration was entered compelling his appearance.[2] 10 Del.C. § 366. Kline appeared specially and moved to quash that order.

There are 2,230,089 Vivonex shares issued and outstanding; all are held in the name of five trustees pursuant to a voting trust agreement dated October 1, 1967. Kline is a trustee and one of thirty persons and firms who have placed such shares into the voting trust.[3]

Preliminarily, I note that there is no attack on the validity of the voting trust which, by its terms, ends December 31, 1972; plaintiff tacitly concedes that it is valid under 8 Del.C. § 218, the voting trust statute.

The agreement provides for a turnover of all Vivonex shares held by the parties to five voting trustees who then surrender them to the Corporation for cancellation and receive new certificates in their names as voting trustees. The stock is to be voted by the trustees. The agreement provides that each party to it receives a voting trust certificate for the number of Vivonex shares he deposits with the trustee; in form, the certificate states:

"Vivonex Corporation

Voting Trust Certificate

"This is to certify that _____ will be entitled upon surrender hereof after the termination of the Agreement hereinafter mentioned, and upon payment of any applicable stamp or transfer tax, to receive a certificate or certificates for _____ fully paid and nonassessable shares of the capital stock (par value $1 per share) of Vivonex Corporation, a Delaware corporation (hereinafter called 'Vivonex'), deposited with the undersigned pursuant to the terms of the Agreement hereinafter mentioned . . . and in the meanwhile the holder hereof shall be entitled to receive payments equal to the cash dividends received by the undersigned . . . upon a like number of shares of capital stock of Vivonex, less the amount of any expense chargeable to the holder hereof. Dividends received by the Voting Trustees in stock of Vivonex having voting power shall be payable in voting trust certificates in form similar hereto.

---

1. The complaint alleges that both Winitz and Kline were employed by United Aircraft Corporation and that Vivonex was formed by them with United to develop the Life Sciences aspects of its business.

2. The order reads in part:
   ". . . is hereby appointed Sequestrator to seize and hold, pursuant to the terms of this order, the property of defendant, S. Allan Kline, in the State of Delaware, consisting of 310,-952 shares of common stock of defendant, Vivonex Corporation, a Delaware corporation, and registered in the name of said individual defendant, together with any and all rights, title and inter-est of said individual defendant in the stock of the corporation."

3 That there are eight issued stock certificates representing all issued Vivonex shares and all are registered in the name of the voting trustees, as follows:

| Certificate No. | Number of Shares |
| --- | --- |
| 1 | 400,000 |
| 2 | 114,286 |
| 3 | 28,571 |
| 4 | 1,371,500 |
| 5 | 185,721 |
| 6 | 115,011 |
| 7 | 10,000 |
| 8 | 5,000 |
| Total | 2,230,089 |

". . . No voting right passes by this certificate, and until the actual delivery by the Voting Trustees of stock certificates for shares of stock in Vivonex as aforesaid, the Voting Trustees shall, subject to the provisions of such Agreement, be entitled to exercise all rights of ownership with respect to such stock.

"No stock certificate shall be deliverable hereunder until the termination of the aforesaid Voting Trust Agreement and, until so delivered, such stock certificates and the shares represented thereby shall be subject to the provisions of such Agreement.

"This certificate is transferable on the books of the Voting Trustees . . ."

Kline's shares in Vivonex have been deposited with the voting trustees who have issued voting trust certificates to him. Was there a seizure by the Sequestrator of an interest which Kline has or may have in the Vivonex shares?

### B.

A voting trust is an agreement between stockholders on one side and trustees on the other whereby rights to vote the stock are transferred to and vested in the trustees 8 Del.C. § 218; a stockholder who deposits his stock in a voting trust parts with his voting rights but retains "beneficial" ownership. Clarke Memorial College v. Monaghan Land Co., Del.Ch., 257 A. 2d 234 (1969). Smith v. Biggs Boiler Works Co., 33 Del.Ch. 183, 91 A.2d 193 (1952); Peyton v. William C. Peyton Corporation, 22 Del.Ch. 187, 194 A. 106 (1937). Under certain circumstances a holder of a voting trust certficate has the rights of a stockholder in the corporation. See e. g. Chandler v. Bellanca Aircraft Corporation, 19 Del.Ch. 57, 162 A. 63 (1932); O'Grady v. United States Independent Telephone Co., 75 N.J.Eq. 301, 71 A. 1040 (1909). And conversely, the holder has for certain purposes the liability of a stockholder. John W. Cooney Co. v. Arlington Hotel Co., 11 Del.Ch. 286, 101 A. 879 (1917).

Thus by the very nature of a voting trust all interest in deposited shares remains in the beneficiary of the trust except the right to vote them and that is vested in the trustees. Clarke Memorial College v. Monaghan Land Co., *supra*; compare Tracey v. Franklin, 30 Del.Ch. 407, 61 A.2d 780 (1948) aff'd 31 Del.Ch. 477, 67 A.2d 56 (1949). Parties, of course, may contract for other terms as to both substance and mechanics. Scott v. Arden Farms Co., 26 Del.Ch. 283, 28 A.2d 81 (1942).

These rules of law establish beyond doubt that Kline has an equitable interest in the 310,952 shares of Vivonex which he deposited in the voting trust. But to say this is not to decide the motion because every equitable interest is not seizable. We must now look to the statute and its requirements before it can be determined whether or not Kline's interest was seized.

### C.

10 Del.C. § 366 reads:

". . . The Court may compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults. . . ."

The primary purpose of this statute is to compel the appearance of a nonresident. Trans World Airlines, Inc. v. Hughes Tool Company, 41 Del.Ch. 11, 187 A.2d 350 (1962); Lefcourt Realty Corporation v. Sands, 35 Del.Ch. 164, 113 A.2d 428 (1955), aff'd 35 Del.Ch. 340, 117 A.2d 365 (1955). And, of course, only his property may be seized. Nickson v. Filtrol Corp., Del.Ch., 265 A.2d 425 (1970). And to be seizable that property must be salable; indeed sale is the only disposition which can be made of it, if the nonresident does not appear. Wife v. Husband, Del.Ch., 271 A.2d 51 (1970);

Wightman v. San Francisco Bay Toll Bridge Co., 16 Del.Ch. 200, 142 A. 783.[4]

In Greene v. Johnston, 34 Del.Ch. 115, 99 A.2d 627 (1953) the Supreme Court held that equitable interests are subject to sequestration, but any order of seizure must be specific as to the property:

"But in respect of unrecorded equitable interests the plaintiff's affidavit and the court's order should not only specify the name of the corporation issuing the shares but should also contain an identification of the shares sufficient to enable the corporation to make adequate notations of the seizure upon its books. Presumably in the ordinary case this could be done by specifying the name of the holder of record. As the Chancellor said in his opinion below, the statute contemplates an effective seizure. It is difficult to see how an effective seizure of equitable interests can be made unless they are identified with reasonable certainty by the court order. Such a procedure is necessary not only for the protection of the corporation but for the protection of third parties who may be holders of record of stock in which other persons may have an interest."

See also Cannon v. Union Chemicals & Materials Corp., 37 Del.Ch. 399, 144 A.2d 145 (1958).

■ These decisions establish that, to be seizable under an order of sequestration based on § 366, an equitable interest must be owned beneficially by the nonresident, it must be capable of being sold, it must be capable of effective seizure, and it must be readily identifiable.

■ In my view the order of sequestration entered by the Court was not effective

in reaching Kline's equitable interest in the Vivonex shares. In short, seizure does not meet these tests for at least two reasons.

First, on this record the Vivonex shares are the property of the "trust entity" rather than of Kline. While the trust here is something less than the typical inter-vivos trust found in Nickson v. Filtrol Corp., *supra*, the interest of third parties in the trust and its contents is even more immediate. Thus we have here twenty-nine other depositing stockholders, all bound by the same terms and all their certificates have been exchanged for the eight now held by the voting trustees. In which of those does Kline have an interest? How is his beneficial interest to be related to specific blocks or lots of shares held by the trustees? To adopt Chief Justice Southerland's rhetorical question in Buechner v. Farbenfabriken Bayer Aktiengesellschaft, 38 Del.Ch. 490, 154 A.2d 684 (1959): How could the seized shares (in Vivonex) be sold to satisfy plaintiff's claim without utter disregard of the rights of others in the voting trust?

In a given case the beneficial interest of a depositing stockholder may be capable of meeting the standards fixed by the decisions. Compare Tracey v. Franklin, *supra*. So it is neither wise nor necessary to say that every equitable interest in a voting trust is beyond sequestration under § 366. But here, Kline's beneficial interest is not readily identifiable, it is not capable of effective seizure and it cannot be sold without disregard of the rights of third parties in the voting trust. Kline has a contract right to return of his shares when the agreement ends but, at this time, I am unable to find an equitable interest in them which was reached by the sequestration order.[5]

---

4. In Cheff v. Athlone Industries, Inc., 43 Del.Ch. 394, 233 A.2d 170 (1967), the Supreme Court said:
   "The shares could not be sold under § 366 to satisfy the demand of the plaintiff in this case; as has been seen, Cheff held no direct interest therein subject to sale. It follows, in our opinion that

Cheff had no interest, subject to sequestration under § 366, in the stock registered in the name of Katherine Nystrom Cheff."

5. Transferable voting trust certificates have been issued which reflect "interests" in the trust corpus held by the trustees,

In addition the very terms of the Court's order relate to the point I have tried to make above, and they provide an independent basis for granting the motion.

■■■■■ It is elementary that the authority of the Sequestrator is derived solely from the order of the Court and it must describe specifically the property to be seized when there is an equitable interest involved. Greene v. Johnston, *supra*. The order entered here directs seizure of "310,-952 shares of common stock of defendant, Vivonex . . . registered in the name of" S. Allan Kline. There are no shares so registered. Since that which was directed to be seized was not seized, it follows that anything which was seized did not comply with the order and so it must be vacated.

In view of the conclusion I have reached it is not necessary to consider other arguments made by Kline.

#### D.

Finally, I turn to plaintiff's motion for a default judgment against Kline.

When the order of sequestration was issued plaintiff also secured an order from the Court directing that a summons issue againt Kline and obliging him to appear and answer by a date fixed.[6] Substituted service was provided by registered or certified mail and by publication in a Wilmington newspaper. Kline has not appeared, other than to contest jurisdiction over him, and plaintiff has moved for a default judgment.

Citing Stark v. Stark, 33 Del.Ch. 386, 93 A.2d 918 (1953), Kline defends entirely on the ground that § 365 applies only to proceedings in which a defendant is a Delaware resident when process is served. It is undisputed that Kline is not a Delaware resident and therefore, he argues, the motion for default judgment should be denied.

In *Stark* Chancellor Seitz considered the first paragraph of what was then § 4374 of the Revised Code of 1935 (from which § 365 is derived) and, quite clearly, he determined that unless a defendant was a Delaware resident any default judgment entered against him under the statute was void. However, in Abercrombie v. Davies, 35 Del.Ch. 354, 118 A.2d 358 (1955), decided just two years later, the same Chancellor held that § 365 provides for service on parties having possible interest therein "including non-residents." Any seeming inconsistency is explained by the statutory history.

■■■■ Prior to adoption of the 1953 Delaware Code the "in rem" statute was divided by § 4374 of the 1935 Code into two parts:

---

i. e. in the eight certificates for all Vivonex shares. Plaintiff argues in his brief that those certificates may be effectively transferred, seized and sold. So they may be. But seizure of the voting trust certificates is not involved here. All of the documentation (and the Court order) are directed to the Vivonex shares.

6. 10 Del.C. § 365 states:
"If, after summons . . . issued out of the Court of Chancery, any defendant . . . does not appear in obedience to the process . . . the Court may, on affidavit that such de-fendant is out of the State, or cannot be found to be served with process and that there is just ground to believe that he intentionally avoids such service, make an order for his appearance on a certain day and publish such order as the Court directs not less than once a week for three consecutive weeks. If the defendant does not appear . . . the Court may enter judgment by default . . . and may thereupon issue process to compel the performance either by seizure of . . . property of such defendant . . . sufficient to satisfy the plaintiff's demand . . ."

the first part concerned residents, the second concerned nonresidents. The procedures were essentially the same no matter what a defendant's residence. The reasonable conclusion is that the separate provisions were combined into one in the 1953 Code. And, as I see it, for that reason when *Abercrombie* came up for decision the Chancellor held § 365 is applicable to both residents and nonresidents. I agree with that conclusion and I follow it here.

It follows that plaintiff's motion should be granted on what has been said and written so far. But counsel have not briefed the question of whether we really have an in rem action here. That must be examined before the consequences of default can be determined.