John Richard WARREN Jr., Appellant,

v.

**WARREN EQUIPMENT COMPANY; Compressor Systems, Inc.; Carole V. Warren–Burkett; Steven C. Lindgren; Richard D. Folger; T. Milton Honea; Jerrold M. Jung; and Robert L. Stillwell, Appellees.**

No. 11–04–00169–CV.

Court of Appeals of Texas, Eastland.

Feb. 16, 2006.

Gary L. Lewis, Nanneska N. Hazel, R. James George, Jr., George & Brothers, L.L.P., Austin, James P. Boldrick, Boldrick, Clifton & Holland, P.C., Midland, for appellant.

Barry Beck, Chris Aycock, Cotton, Bledsoe, Tighe & Dawson, Harper Estes, Steven C. Kiser, James M. Alsup, Lynch, Chappell & Alsup, Midland, Charles F. Richards, Jr., Richards, Layton & Finger, P.A., Wilmington, DE, for appellees.

Panel consists of: WRIGHT, C.J., and McCALL, J.

## OPINION

JIM R. WRIGHT, Chief Justice.

John Richard (Rick) Warren Jr., individually, as the trustee of a voting trust, and on behalf of WTEC Holdings, Inc., filed suit against Warren Equipment Company, Compressor Systems, Inc. (CSI),[1] and certain members of the boards of directors of those corporations, including his mother Carole V. Warren–Burkett, Steven C. Lindgren, Richard D. Folger, T. Milton Honea, Jerrold M. Jung, and Robert L. Stillwell. The trial court granted appellees' motion for summary judgment and supplemental motion for summary judgment. Rick filed a notice of appeal. We affirm.

Rick is the son of John R. Warren Sr. (Johnny) and Carole V. Warren–Burkett.[2] For purposes of this opinion, we take it to be true that, at all times relevant to this lawsuit, members of the Warren family owned in various percentages the majority of the stock of Warren Equipment Company. Warren Equipment Company owned WTEC Holdings, Inc. (Holdings). Holdings was the general partner of West Texas Equipment Company, L.P. (the dealer-

ship). The dealership was a dealer for Caterpillar equipment. Warren Equipment and Holdings were both incorporated pursuant to the laws of the State of Delaware.

Rick had worked for the dealership's predecessor before it became one of the Warren family businesses. He continued to work at the dealership after the Warrens took over the dealership. The summary judgment evidence shows that in 1993 Rick became president of the dealership.

In 1995, Warren Equipment owned 100% of the stock of Holdings. At that time, Johnny, Rick, and Warren Equipment entered into a voting trust agreement whereby Warren Equipment transferred all of Holdings stock into the voting trust. The voting trust agreement named Johnny and Rick co-trustees of Warren Equipment's stock in Holdings.

Rick and Johnny began to have disagreements over the management of the dealership; and, in October 1998, Rick resigned from his position as president of the dealership and left. One of the primary disputes arose over Rick's desire to be in control of the dealership and Johnny's refusal to allow that. However, Rick remained on Warren Equipment's board of directors until the other board members removed him.

On September 7, 1999, Johnny died unexpectedly. On September 20, 1999, the board of directors of Warren Equipment removed Rick from his position as a director of Warren Equipment. On September 21, 1999, Warren Equipment's board of directors merged Holdings into Warren

---

1. Rick makes no arguments on appeal concerning CSI.

2. Johnny died and Carole later remarried.

Equipment. On September 19, 2003, Rick sued appellees.

Rick alleged causes of action for breach of contract, breach of fiduciary duty, and minority shareholder oppression as well as other causes of action not germane to this appeal. Rick also asked the trial court to enter a declaratory judgment establishing the buyout price for Warren Equipment shares tendered by him to Warren Equipment pursuant to a purported 1996 Stock Buyout Process and Formula. Appellees alleged that no one with the authority to make such an agreement for Warren Equipment ever agreed to it. Appellees also alleged, among other things, affirmative defenses of limitations, release, and the statute of frauds. Appellees filed a motion for summary judgment and a supplemental motion for summary judgment, both of which the trial court granted on April 15, 2004, without giving its reasons therefor.

We have grouped Rick's issues on appeal generally into seven categories. Rick claims that the trial court erred as a matter of law if it found that his claims were barred by the Delaware Statute of Limitations. He also maintains that the trial court erred as a matter of law if it found that the Delaware Statute of Frauds barred his claim. Next, he argues that the trial court erred if it found that he had either waived or released his claims. Rick also contends that there were material issues of fact on the question of the 1996 "Stock Buyout Process and Formula." He also maintains that the trial court erred when it upheld the merger of Warren Equipment and Holdings because Warren Equipment was not, as a matter of law, an owner of the stock in Holdings. Rick asserts further that there was a genuine issue of material fact on the issue of whether appellees breached a fiduciary duty owed to Rick and that, as a matter of

law, such duties were owed to him as a minority shareholder in Warren Equipment. Finally, Rick takes issue with the trial court's ruling on appellees' objections to Rick's summary judgment affidavit and the trial court's ruling on his objections to two affidavits filed by appellees.

The rules for reviewing a traditional motion for summary judgment are well established. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. Every reasonable inference is indulged in favor of the nonmovant, and any doubts must be resolved in favor of the nonmovant. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420 (Tex.1997); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Summary judgment is proper if the defendant disproves at least one element of each of the plaintiff's claims or establishes all elements of an affirmative defense to each claim. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d at 425; *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 476–77 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Id.* When a trial court does not specify the grounds upon which a motion for summary judgment is granted, an appellate court will affirm the judgment if any of the theories advanced are meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623 (Tex.1996). And, where the trial court

does not state the grounds upon which it granted the motion for summary judgment, the nonmovant must establish that none of the grounds stated in the motion are sufficient. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995).

■ We will first address Rick's issues concerning the "1996 Stock Buyout Process and Formula." Rick contends that Warren Equipment set up a "Stock Buyout Process and Formula" in 1996 to establish the terms under which a shareholder could sell Warren Equipment stock back to Warren Equipment. Rick maintains that he is entitled to sell his Warren Equipment shares back to Warren Equipment at a price established in that "Stock Buyout Process and Formula." [3]

It was the practice of the Warren family to meet informally twice each year to discuss Warren family business. The Warren family had adopted a set of rules that were to be followed by family members in business dealings. These rules were known as the "Family Code of Understanding." The family also had rules relating to "Shareholder Responsibilities and Rights." Both sets of rules were general statements regarding conduct expected from members of the Warren family. The semiannual meetings of the Warren family were known as Family Council meetings. Minutes were taken during the "Family Council" meetings, were entered into the "Family Council Green Book," and were distributed to the family members. Some of the Family Council meetings were held in Midland; other meetings were held at various resorts.

Rick argues that he, his brother, and his brother-in-law drafted the 1996 "Stock Buyout Process and Formula" and that it was approved by members of the Warren family at one of their Family Council meetings in January 1996.[4] Rick acknowledges that there was not a formal vote taken at the meeting and that there was no verbal affirmative consent to the agreement. Further, the agreement was never signed. This family meeting was not a formal meeting of the board of Warren Equipment, and not all members were present.

■ It is important to note that the stock of Holdings was not owned by the Warren family but, rather, by Warren Equipment. Even though Johnny, Carole, and Rick made up three-fourths of the board of directors of Warren Equipment, the 1996 "Stock Buyout Process and Formula" was not signed by anyone either individually or for Warren Equipment. Only the directors of a corporation are empowered to act on its behalf, except as to certain duties which it may delegate to its officers. *AGR Halifax Fund, Inc. v. Fiscina*, 743 A.2d 1188, 1194 (Del.Ch.1999). The record shows that the 1996 "Stock Buyout Process and Formula" was not adopted, approved, or ratified during any formal meeting of Warren Equipment's board of directors. The "Green Book" entries regarding the January 1996 meeting show that "[m]ore information about company activities [is] needed on a regular basis and to be safe, a buyout agreement

---

**3.** On May 10, 1999, Rick and Warren Equipment, under Johnnys signature, entered into an agreement whereby Rick would transfer 2,670 shares of Warren Equipment stock back to Warren Equipment. This is not the stock that is involved in this appeal. Rick received the sum of $349,461.26 for the stock.

**4.** In his deposition, Rick states that the family members present at the meeting were his parents, three adult Warren children, and their respective spouses.

among the siblings needs to be structured, agreed upon, and legally drafted." In several Family Council meetings after 1996, reference is made in the "Green Book" to the fact that an agreement still needed to be worked out, "pursued."

Under Delaware law, Warren Equipment could be bound to the agreement only after a majority of the directors voted therefor at a meeting of the board. *See* DEL.CODE ANN. tit. 8, 141(a), (b). The meeting which took place was a meeting of the Family Council, not Warren Equipment. Perhaps in the absence of such a meeting, *all* of the directors could have bound Warren Equipment by *written* unanimous consent, as they regularly did. *See* DEL.CODE ANN. tit. 8, 141(f). However, the summary judgment evidence conclusively established that neither of those actions took place. On many occasions, the directors executed written unanimous consents. All of the board members of Warren Equipment, including Rick, executed a unanimous consent after the January 1996 meeting; they made no mention of a "Stock Buyout Process and Formula."

Viewing the summary judgment evidence under the standard of review previously set forth, we find that appellees established as a matter of law that the 1996 "Stock Buyout Process and Formula" did not bind Warren Equipment to purchase Rick's stock. As we have noted, a corporation acts only through its board of directors except as may properly be delegated to its officers. *AGR Halifax Fund, Inc.*, 743 A.2d at 1194; DEL.CODE ANN. tit. 8, 141. The board took no action at this meeting of the Family Council. As a matter of law, there could be no breach of a contract that did not exist. For the same reasons, the trial court did not err when it entered summary judgment declining to enter a declaratory judgment under the "Stock Buyout Process and Formula." We

overrule issues (b), (f), and (g) in which Rick complains that he raised genuine issues of material fact regarding the buyout agreement.

We need not address Rick's claims in issue (a) that the trial court erred as a matter of law on the question of limitations. Nor do we need to address Rick's assertions in issue (e) that he raised genuine issues of material fact regarding appellees' defensive claims of waiver and release under the 1996 "Stock Buyout Process and Formula." Furthermore, in view of our holding that the 1996 "Stock Buyout Process and Formula" did not constitute a contract, we will not address Rick's assertions in issues (c) and (d) that the trial court erred as a matter of law if it applied the Delaware statute of frauds in this case.

We will next address Rick's complaints concerning the merger of Holdings into Warren Equipment. As previously stated, Rick, Johnny, and Warren Equipment entered into a voting trust agreement in 1995. Pursuant to the agreement, Johnny and Rick were co-trustees of Warren Equipment's stock in Holdings. Rick became the sole trustee upon Johnny's death. Rick alleged that, by merging Holdings with Warren Equipment, appellees breached the voting trust agreement. He also claims that appellees breached fiduciary duties owed to him. Appellees argued in their motion for summary judgment that there was no breach of contract or breach of any fiduciary duties in connection with the voting trust agreement. Furthermore, appellees claim that even if such causes of action existed they are barred by the statute of limitations of the State of Delaware.

Warren Equipment and Holdings were both incorporated pursuant to the laws of the State of Delaware. The laws of Delaware govern the "internal affairs" of the corporation. TEX. BUS. CORP. ACT ANN. art. 8.02 (Vernon 2003).

After voting to remove Rick as Warren Equipment director on September 20, 1999, Warren Equipment's board of directors voted to merge Holdings into Warren Equipment on September 21, 1999, pursuant to DEL.CODE ANN. tit. 8, 253. Section 253 provides for a short-form merger of corporations in certain situations. The Delaware statute provides in relevant part:

(a) In any case in which at least 90% of the outstanding shares of each class of the stock of a corporation or corporations ... of which class there are outstanding shares that, absent this subsection, would be entitled to vote on such merger, is owned by another corporation and 1 of the corporations is a corporation of this State ... the corporation having such stock ownership may either merge the other corporation or corporations into itself and assume all of its or their obligations, or merge itself, or itself and 1 or more of such other corporations, into 1 of the other corporations by executing, acknowledging and filing, in accordance with § 103 of this title, a certificate of such ownership and merger setting forth a copy of the resolution of its board of directors to so merge and the date of the adoption.

■ Rick argues that, under the terms of the voting trust agreement, Warren Equipment was not the "owner" of any stock in Holdings but, rather, that Warren Equipment had conveyed legal title of the Holdings's stock to Rick and Johnny. Rick's argument is that the Delaware statute allows for a short-form merger only when at least 90% of the shares of the affected corporation are "owned" by another corporation. He takes the position that, under the voting trust agreement, the trustee was the owner of the stock, not Warren Equipment. Therefore, he claims that *Warren Equipment could not declare*

a merger of Holdings into Warren Equipment under Delaware law without his consent as trustee; it was not an "owner" of the stock. We disagree.

■ A stockholder who deposits stock in a voting trust retains the beneficial ownership of the stock. *Winitz v. Kline,* 288 A.2d 456 (Del.Ch.1971). Section 253 speaks of "owners," not of "stockholders" or "stockholders of record." In a long-form merger, Delaware law provides that the board of directors of a corporation will compile certain information and then submit that information to the shareholders of the corporation. After the report of the board has been furnished to the shareholders, the shareholders are entitled to vote on the merger. DEL.CODE ANN. tit. 8, § 251. The same is not true when a short-form merger occurs under Section 253.

■ In accordance with the board's vote, Warren Equipment filed a Certificate of Ownership and Merger with the State of Delaware. A short-form merger under Section 253 is a unilateral act by the parent company. The merger is complete upon resolution of the board of directors of the parent company and the filing of a certificate of ownership and merger. *See Glassman v. Unocal Exploration Corp.,* 777 A.2d 242 (Del.2001). A Section 253 short-form merger does not implicate stockholders, stockholders of record, or voting rights; ownership is the only question. By statute, the directors are the ones who vote on the short-form merger; shareholders are not entitled to vote. When a stockholder deposits stock in a voting trust, the stockholder "parts with his voting rights but retains 'beneficial' ownership" of the stock. *Winitz,* 288 A.2d at 459.

Because Warren Equipment retained beneficial ownership of all of Holdings's stock and because voting rights are not implicated in a short-form merger, the

board of directors of Warren Equipment effectuated the merger when it approved the merger resolution and filed the Certificate of Ownership and Merger with the State of Delaware in accordance with Section 253. The trial court did not err, as a matter of law, in granting summary judgment for appellees on the issues of the merger of Warren Equipment and Holdings.

Rick claims that appellees breached a fiduciary duty owed to him when Holdings was merged into Warren Equipment. Again, we disagree.

■ Rick appears to be making two different breach-of-fiduciary claims in his brief to this court. First, Rick has stated his issue (i), relating to breaching fiduciary duties, generally against all appellees. Rick asks this question in issue (i): "Was there a genuine issue of material fact about whether Appellees breached their fiduciary duties to Appellant Rick Warren by approving the merger of WTEC Holdings, Inc. into Warren Equipment Company so that granting summary judgment on this basis constituted error?" In further explanation of this issue, in the final paragraph of his discussion of the issue, Rick states:

> When WEC's [Warren Equipment's] *Board of Directors* voted to merge Holdings into WEC without Rick Warren's agreement, they *breached* not only *the* terms of the *Agreement* but *also* their *fiduciary duties under the Agreement because of the representations of their agent.* The trial court erred in granting summary judgment to Appellees if it did so on the basis that Appellees did not breach the terms of the Agreement and

their fiduciary duties under it. (emphasis added)

First, as we have already held, Warren Equipment did not breach the agreement when it merged Holdings into Warren Equipment. Next, the agent to whom Rick refers is appellee Lindgren. Lindgren wrote a letter to Rick in which he set forth his legal opinion on various rights connected with Rick's involvement in several Warren family businesses. Although Rick argues that Lindgren was acting as Warren Equipment's agent in writing the letter, there is nothing in the letter that indicates Lindgren was writing as a member of or on behalf of the board of directors of Warren Equipment. The summary judgment evidence shows as a matter of law that nothing in Lindgren's letter constituted an action by the board of Warren Equipment. Moreover, the laws of the State of Delaware clearly authorized the action taken by the board.

Under the voting trust agreement, Rick, as trustee, could not merge Holdings with any other company without the consent of Warren Equipment. However, the converse is not true. As a matter of law, there is nothing in the agreement that would require the board of Warren Equipment to obtain Rick's consent before entering into a merger. Further, Delaware's short-form merger statute imposes no such requirement on Warren Equipment, the owner of the stock in Holdings.

Certain duties of disclosure would be owed to shareholders had Warren Equipment engaged in a long-form merger under Delaware law. However, this was a short-form merger, and such duties do not exist. Section 253.[5] The short-form merger statute allows the owners of 90% of the

---

5. DEL.CODE ANN. tit. 8, § 251 (the long-form merger statute) provides that notice of the merger is to be given to the shareholders and that the notice contain certain detailed information regarding the merger. The statute further provides for a shareholder vote upon the merger.

stock to enter into a merger without shareholder approval. Warren Equipment owned 100% of the stock of Holdings. The board of directors of Warren Equipment did expressly that which was allowed by statute; they breached no fiduciary duty in following the short-form procedure provided by Section 253. *See Glassman,* 777 A.2d at 242. Rick's issues (h) and (i) relating to the propriety of the merger are overruled.

■ We take Rick's second argument regarding fiduciary duties to be that the Warren family had a fiduciary duty to Rick and that the family breached that fiduciary duty.

In that part of his brief designated "Statement of Facts," Rick discusses his family and the fiduciary duties they owed to him as a result of the family relationship. Of course, the statement-of-facts section of the brief contains citations to the record; but, in accordance with TEX.R.APP. P. 38.1, it does not contain citations of authority. We find citations of authority on the family fiduciary issue in the argument-and-authorities section of Rick's brief which addresses the limitations issue. Although we do not address the limitations issue, we will address the family fiduciary issue.

The summary judgment evidence establishes as a matter of law that no such fiduciary duty was breached, even if such a duty existed. The family took no action that would have resulted in a breach of any fiduciary duty. All of the issues in this case insofar as the "Stock Buyout Process and Formula" and the merger are concerned involved the inaction or the action of the board of directors of Warren Equipment, not the Warren family. It would have been the board of directors that could bind Warren Equipment to any agreement regarding the buyout of Rick's stock, not the Warren family. It was Warren Equipment, the owner of 100% of Holdings's stock, that took the action to merge Holdings into Warren Equipment, not the Warren family.

Further, there was no breach of any duty owed to Rick as a minority stockholder. While he was a minority stockholder in Warren Equipment, he was not a minority stockholder in Holdings, the corporation affected by the merger. There were no minority shareholders in Holdings. Rick's arguments relating to fiduciary duties are overruled.

Rick also argues that the trial court erred in granting appellees' objections to his amended affidavit and in overruling his objections to certain affidavits filed by appellees. Appellees objected to numerous statements in Rick's amended affidavit. In its ruling on appellees' motion for summary judgment, the trial court sustained appellees' objections but did not rule upon Rick's objections. Rick has not given us record references, and we can find none, where the trial court overruled his objections to appellees' affidavits. We need not rule upon those issues. *See* TEX.R.APP. P. 33.1, 38.1.

■ We do consider Rick's issue regarding appellees' objections to his amended affidavit. We review a trial court's rulings in admitting or excluding evidence under an abuse of discretion standard. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998). To be competent summary judgment evidence, an affidavit must be based on personal knowledge, set forth facts admissible in evidence, and affirmatively show the affiant's competency to testify as to the matters stated therein. TEX.R. CIV. P. 166a(f). Unsupported conclusory statements are not credible and are not susceptible to being readily contro-

verted and, as a result, are not proper summary judgment evidence. *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no writ). After reviewing the complained of statements, Rick did not establish that the trial court abused its discretion in sustaining appellees' objections to the amended affidavit.

Even if we were to assume that the trial court erred in its evidentiary rulings, such rulings are not such as would cause us to conclude that the errors probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1(a). The statements relate to the existence of fiduciary duties owed by Warren Equipment or the family and to damages as a result of the breach of those duties. We have held that, even if such duties existed, the summary judgment evidence conclusively established that no breach occurred. We overrule issue (j).

The judgment of the trial court is affirmed.

W.G. ARNOT III retired effective July 31, 2005, and is, therefore, not participating.