Opinion filed February 16, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed February 16, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00169-CV 

                                                     __________

 

                            JOHN
RICHARD WARREN JR., Appellant

 

                                                             V.

 

      WARREN
EQUIPMENT COMPANY; COMPRESSOR SYSTEMS, INC.;

     CAROLE V.
WARREN-BURKETT; STEVEN C. LINDGREN; RICHARD

             D.
FOLGER; T. MILTON HONEA; JERROLD M. JUNG; AND

                                  ROBERT
L. STILLWELL, Appellees

 



 

                                         On
Appeal from the 238th District Court

 

                                                        Midland
County, Texas

 

                                                Trial
Court Cause No. CV-44,316

 



 

                                                                   O
P I N I O N

 








John Richard (Rick) Warren Jr., individually, as
the trustee of a voting trust, and on behalf of WTEC Holdings, Inc., filed suit
against Warren Equipment Company, Compressor Systems, Inc. (CSI),[1]
and certain members of the boards of directors of those corporations, including
his mother Carole V. Warren-Burkett, Steven C. Lindgren, Richard D. Folger, T.
Milton Honea, Jerrold M. Jung, and Robert L. Stillwell.  The trial court granted appellees= motion for summary judgment and
supplemental motion for summary judgment. 
Rick filed a notice of appeal.  We
affirm.

Rick is the son of John R. Warren Sr. (Johnny) and
Carole V. Warren-Burkett.[2]  For purposes of this opinion, we take it to
be true that, at all times relevant to this lawsuit, members of the Warren
family owned in various percentages the majority of the stock of Warren
Equipment Company.  Warren Equipment
Company owned WTEC Holdings, Inc. (Holdings). 
Holdings was the general partner of West Texas Equipment Company, L.P.
(the dealership).  The dealership was a
dealer for Caterpillar equipment.  Warren
Equipment and Holdings were both incorporated pursuant to the laws of the State
of Delaware.

Rick had worked for the dealership=s predecessor before it became one of
the Warren family businesses.  He
continued to work at the dealership after the Warrens took over the
dealership.  The summary judgment
evidence shows that in 1993 Rick became president of the dealership.

In 1995, 
Warren Equipment owned 100% of the stock of Holdings.  At that time, Johnny, Rick, and Warren
Equipment entered into a voting trust agreement whereby Warren Equipment
transferred all of Holdings stock into the voting trust.  The voting trust agreement named Johnny and
Rick co-trustees of Warren Equipment=s
stock in Holdings.

Rick and Johnny began to have disagreements over
the management of the dealership; and, in October 1998, Rick resigned from his
position as president of the dealership and left.  One of the primary disputes arose over Rick=s desire to be in control of the
dealership and Johnny=s
refusal to allow that.  However, Rick
remained on Warren Equipment=s
board of directors until the other board members removed him.

On September 7, 1999, Johnny died
unexpectedly.  On September 20, 1999, the
board of directors of Warren Equipment removed Rick from his position as a
director of Warren Equipment.  On
September 21, 1999, Warren Equipment=s
board of directors merged Holdings into Warren Equipment.  On September 19, 2003, Rick sued appellees.








Rick alleged causes of action for breach of
contract, breach of fiduciary duty, and minority shareholder oppression as well
as other causes of action not germane to this appeal.  Rick also asked the trial court to enter a
declaratory judgment establishing the buyout price for Warren Equipment shares
tendered by him to Warren Equipment pursuant to a purported 1996 AStock Buyout Process and Formula.@ 
Appellees alleged that no one with the authority to make such an
agreement for Warren Equipment ever agreed to it.  Appellees also alleged, among other things,
affirmative defenses of limitations, release, and the statute of frauds.  Appellees filed a motion for summary judgment
and a supplemental motion for summary judgment, both of which the trial court
granted on April 15, 2004, without giving its reasons therefor.

We have grouped Rick=s
issues on appeal generally into seven categories.  Rick claims that the trial court erred as a
matter of law if it found that his claims were barred by the Delaware Statute
of Limitations.  He also maintains that
the trial court erred as a matter of law if it found that the Delaware Statute
of Frauds barred his claim.  Next, he
argues that the trial court erred if it found that he had either waived or
released his claims.  Rick also contends
that there were material issues of fact on the question of the 1996 AStock Buyout Process and Formula.@ 
He also maintains that the trial court erred when it upheld the merger
of Warren Equipment and Holdings because Warren Equipment was not, as a matter
of law, an owner of the stock in Holdings. 
Rick asserts further that there was a genuine issue of material fact on
the issue of whether appellees breached a fiduciary duty owed to Rick and that,
as a matter of law, such duties were owed to him as a minority shareholder in
Warren Equipment.  Finally, Rick takes
issue with the trial court=s
ruling on appellees=
objections to Rick=s summary
judgment affidavit and the trial court=s
ruling on his objections to two affidavits filed by appellees.








The rules for reviewing a traditional motion for
summary judgment are well established. 
The movant has the burden of showing that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law.  In deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true.  Every
reasonable inference is indulged in favor of the nonmovant, and any doubts must
be resolved in favor of the nonmovant.   Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420 (Tex. 1997); Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548‑49 (Tex. 1985).  Summary judgment is proper if the defendant
disproves at least one element of each of the plaintiff=s
claims or establishes all elements of an affirmative defense to each
claim.  Am. Tobacco Co. v. Grinnell,
951 S.W.2d at 425; Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d
472, 476‑77 (Tex. 1995); Montgomery v. Kennedy, 669 S.W.2d 309,
310‑11 (Tex. 1984).

Once the defendant produces sufficient evidence to
establish the right to summary judgment, the burden shifts to the plaintiff to
come forward with competent controverting evidence raising a genuine issue of
material fact with regard to the element challenged by the defendant.  Id. 
When a trial court does not specify the grounds upon which a motion for
summary judgment is granted, an appellate court will affirm the judgment if any
of the theories advanced are meritorious. 
Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623 (Tex.
1996).  And, where the trial court does
not state the grounds upon which it granted the motion for summary judgment,
the nonmovant must establish that none of the grounds stated in the motion are
sufficient.  Harwell v. State Farm
Mut. Auto Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).

We will first address Rick=s
issues concerning the 1996 AStock
Buyout Process and Formula.@  Rick contends that Warren Equipment set up a AStock Buyout Process and Formula@ in 1996  to establish the terms under which a
shareholder could sell Warren Equipment stock back to Warren Equipment.  Rick maintains that he is entitled to sell
his Warren Equipment shares back to Warren Equipment at a price established in
that AStock
Buyout Process and Formula.@[3]








It was the practice of the Warren family to meet
informally twice each year to discuss Warren family business.  The Warren family had adopted a set of rules
that were to be followed by family members in business dealings.  These rules were known as the AFamily Code of Understanding.@ 
The family also had rules relating to AShareholder
Responsibilities and Rights.@  Both sets of rules were general statements
regarding conduct expected from members of the Warren family.  The semiannual meetings of the Warren family
were known as AFamily
Council@
meetings.  Minutes were taken during the
Family Council meetings, were entered into the AFamily
Council Green Book,@ and were
distributed to the family members.  Some
of the Family Council meetings were held in Midland; other meetings were held
at various resorts.

Rick argues that he, his brother, and his
brother-in-law drafted the 1996 AStock
Buyout Process and Formula@
and that it was approved by members of the Warren family at one of their Family
Council meetings in January 1996.[4]  Rick acknowledges that there was not a formal
vote taken at the meeting and that there was no verbal affirmative consent to
the agreement.  Further, the agreement
was never signed.  This family meeting
was not a formal meeting of the board of Warren Equipment, and not all members
were present.

It is important to note that the stock of Holdings
was not owned by the Warren family but, rather, by Warren Equipment.  Even though Johnny, Carole, and Rick made up
three-fourths of the board of directors of Warren Equipment, the 1996 AStock Buyout Process and Formula@ was not signed by anyone either individually
or for Warren Equipment.  Only the
directors of a corporation are empowered to act on its behalf, except as to
certain duties which it may delegate to its officers.  AGR Halifax Fund, Inc. v. Fiscina, 743
A.2d 1188, 1194 (Del. Ch. 1999).  The
record shows that the 1996 AStock
Buyout Process and Formula@
was not adopted, approved, or ratified during any formal meeting of Warren
Equipment=s board
of directors.  The AGreen Book@
entries regarding the January 1996 meeting show that A[m]ore
information about company activities [is] needed on a regular basis and to be
safe, a buyout agreement among the siblings needs to be structured, agreed
upon, and legally drafted.@  In several Family Council meetings after
1996, reference is made in the AGreen
Book@ to the
fact that an agreement still needed to be worked out, Apursued.@








Under Delaware law, Warren Equipment could be
bound to the agreement only after a majority of the directors voted therefor at
a meeting of the board.  See Del. Code Ann. tit. 8, ' 141(a), (b).  The meeting which took place was a meeting of
the Family Council, not Warren Equipment.  
Perhaps in the absence of such a meeting, all of the directors
could have bound Warren Equipment by written unanimous consent, as they
regularly did.  See Del. Code Ann. tit. 8, ' 141(f). However, the summary judgment
evidence conclusively established that neither of those actions took
place.  On many occasions, the directors
executed written unanimous consents.  All
of the board members of Warren Equipment, including Rick, executed a unanimous
consent after the January 1996 meeting; they made no mention of a AStock Buyout Process and Formula.@

Viewing the summary judgment evidence under the
standard of review previously set forth, we find that appellees established as
a matter of law that the 1996 AStock
Buyout Process and Formula@
did not bind Warren Equipment to purchase Rick=s
stock.  As we have noted, a corporation
acts only through its board of directors except as may properly be delegated to
its officers. AGR Halifax Fund, Inc., 743 A.2d at 1194; Del. Code Ann. tit. 8, ' 141. 
The board took no action at this meeting of the Family Council.  As a matter of law, there could be no breach
of a contract that did not exist.  For
the same reasons, the trial court did not err when it entered summary judgment
declining to enter a declaratory judgment under the AStock
Buyout Process and Formula.@  We overrule issues (b), (f), and (g) in which
Rick complains that he raised genuine issues of material fact regarding the
buyout agreement.

We need not address Rick=s
claims in issue (a) that the trial court erred as a matter of law on the
question of limitations.  Nor do we need
to address Rick=s
assertions in issue (e) that he raised genuine issues of material fact regarding
appellees=
defensive claims of waiver and release under the 1996 AStock
Buyout Process and Formula.@  Furthermore, in view of our holding that the
1996 AStock
Buyout Process and Formula@
did not constitute a contract, we will not address Rick=s
assertions in issues (c) and (d) that the trial court erred as a matter of law
if it applied the Delaware statute of frauds in this case.

We will next address Rick=s
complaints concerning the merger of Holdings into Warren Equipment.  As previously stated, Rick, Johnny, and
Warren Equipment entered into a voting trust agreement in 1995.  Pursuant to the agreement, Johnny and Rick
were co-trustees of Warren Equipment=s
stock in Holdings.  Rick became the sole
trustee upon Johnny=s
death.  Rick alleged that, by merging
Holdings with Warren Equipment, appellees breached the voting trust
agreement.  He also claims that appellees
breached fiduciary duties owed to him. 
Appellees argued in their motion for summary judgment that there was no
breach of contract or breach of any fiduciary duties in connection with the
voting trust agreement.  Furthermore,
appellees claim that even if such causes of action existed they are barred by
the statute of limitations of the State of Delaware.








Warren Equipment and Holdings were both incorporated
pursuant to the laws of the State of Delaware. 
The laws of Delaware govern the Ainternal
affairs@ of the
corporation.  Tex. Bus. Corp. Act Ann. art. 8.02 (Vernon 2003).

            After voting to remove Rick as Warren
Equipment director on September 20, 1999, Warren Equipment=s board of directors voted to merge
Holdings into Warren Equipment on September 21, 1999, pursuant to Del. Code Ann. tit. 8, ' 253. 
Section 253 provides for a short-form merger of corporations in certain
situations.  The Delaware statute
provides in relevant part:

(a) In any case in which at least 90% of the
outstanding shares of each class of the stock of a corporation or corporations
. . . of which class there are outstanding shares that, absent this subsection,
would be entitled to vote on such merger, is owned by another corporation and 1
of the corporations is a corporation of this State . . . the corporation having
such stock ownership may either merge the other corporation or corporations
into itself and assume all of its or their obligations, or merge itself, or
itself  and 1 or more of such other
corporations, into 1 of the other corporations by executing, acknowledging and
filing, in accordance with '
103 of this title, a certificate of  such
ownership and merger setting forth a copy of the resolution of its board of
directors to so merge and the date of the adoption.

 

Rick argues that, under the terms of the voting
trust agreement, Warren Equipment was not the Aowner@ of any stock in Holdings but, rather,
that Warren Equipment had conveyed legal title of the Holdings=s stock to Rick and Johnny.  Rick=s
argument is that the Delaware statute allows for a short-form merger only when
at least 90% of the shares of the affected corporation are Aowned@
by another corporation.  He takes the
position that, under the voting trust agreement, the trustee was the owner of
the stock, not Warren Equipment. 
Therefore, he claims that Warren Equipment could not declare a merger of
Holdings into Warren Equipment under Delaware law without his consent as
trustee; it was not an Aowner@ of the stock.  We disagree.

A stockholder who deposits stock in a voting trust
retains the beneficial ownership of the stock. 
Winitz v. Kline, 288 A.2d 456 (Del. 1971). Section 253 speaks of Aowners,@
not of Astockholders@ or Astockholders
of record.@  In a long-form merger, Delaware law provides
that the board of directors of a corporation will compile certain information
and then submit that information to the shareholders of the corporation.  After the report of the board has been
furnished to the shareholders, the shareholders are entitled to vote on the
merger.  Del. Code Ann. tit. 8, '
251.  The same is not true when a
short-form merger occurs under Section 253.








In accordance with the board=s vote, Warren Equipment filed a
Certificate of Ownership and Merger with the State of Delaware.  A short-form merger under Section 253 is a
unilateral act by the parent company. 
The merger is complete upon resolution of the board of directors of the
parent company and the filing of a certificate of ownership and merger.  See Glassman v. Unocal Exploration Corp.,
777 A.2d 242 (Del. 2001).  A Section 253
short-form merger does not implicate stockholders, stockholders of record, or
voting rights; ownership is the only question. 
By statute, the directors are the ones who vote on the short-form
merger; shareholders are not entitled to vote. 
When a stockholder deposits stock in a voting trust, the stockholder Aparts with his voting rights but
retains >beneficial= ownership@
of the stock.  Winitz, 288 A.2d at
459.

Because Warren Equipment retained beneficial
ownership of all of Holdings=s
stock and because voting rights are not implicated in a short-form merger, the
board of directors of Warren Equipment effectuated the merger when it approved
the merger resolution and filed the Certificate of Ownership and Merger with
the State of Delaware in accordance with Section 253.  The trial court did not err, as a matter of
law, in granting summary judgment for appellees on the issues of the merger of
Warren Equipment and Holdings.

Rick claims that appellees breached a fiduciary
duty owed to him when Holdings was merged into Warren Equipment.  Again, we disagree.

Rick appears to be making two different
breach-of-fiduciary claims in his brief to this court. First, Rick has stated
his issue (i), relating to breaching fiduciary duties, generally against all
appellees.  Rick asks this question in
issue (i):  AWas
there a genuine issue of material fact about whether Appellees breached their fiduciary
duties to Appellant Rick Warren by approving the merger of WTEC Holdings, Inc.
into Warren Equipment Company so that granting summary judgment on this basis
constituted error?@  In further explanation of this issue, in the
final paragraph of his discussion of the issue, Rick states:

When WEC=s
[Warren Equipment=s] Board
of Directors voted to merge Holdings into WEC without Rick Warren=s agreement, they breached not
only the terms of the Agreement but also their fiduciary
duties under the Agreement because of the representations of their agent.  The trial court erred in granting summary
judgment to Appellees if it did so on the basis that Appellees did not breach
the terms of the Agreement and their fiduciary duties under it.  (emphasis added)

 








First, as we have already held, Warren Equipment
did not breach the agreement when it merged Holdings into Warren
Equipment.  Next, the agent to whom Rick
refers is appellee Lindgren. Lindgren wrote a letter to Rick in which he set
forth his legal opinion on various rights connected with Rick=s involvement in several Warren family
businesses.  Although Rick argues that
Lindgren was acting as Warren Equipment=s
agent in writing the letter, there is nothing in the letter that indicates
Lindgren was writing as a member of or on behalf of the board of directors of
Warren Equipment.  The summary judgment
evidence shows as a matter of law that nothing in Lindgren=s letter constituted an action by the
board of Warren Equipment.  Moreover, the
laws of the State of Delaware clearly authorized the action taken by the board.

Under the voting trust agreement, Rick, as
trustee, could not merge Holdings with any other company without the consent of
Warren Equipment.  However, the converse
is not true.  As a matter of law, there
is nothing in the agreement that would require the board of Warren Equipment to
obtain Rick=s consent
before entering into a merger.  Further,
Delaware=s
short-form merger statute imposes no such requirement on Warren Equipment, the
owner of the stock in Holdings.

Certain duties of disclosure would be owed to
shareholders had Warren Equipment engaged in a long-form merger under Delaware
law.  However, this was a short-form
merger, and such duties do not exist. 
Section 253.[5]  The short-form merger statute allows the
owners of 90% of the stock to enter into a merger without shareholder
approval.  Warren Equipment owned 100% of
the stock of Holdings.  The board of
directors of Warren Equipment did expressly that which was allowed by statute;
they breached no fiduciary duty in following the short-form procedure provided
by Section 253.  See Glassman, 777
A.2d at 242.  Rick=s
issues (h) and (i) relating to the propriety of the merger are overruled.

We take Rick=s
second argument regarding fiduciary duties to be that the Warren family had a
fiduciary duty to Rick and that the family breached that fiduciary duty.








In that part of his brief designated AStatement of Facts,@ Rick discusses his family and the
fiduciary duties they owed to him as a result of the family relationship.  Of course, the statement-of- facts section of
the brief contains citations to the record; but, in accordance with Tex. R. App. P. 38.1, it does not
contain citations of authority.  We find
citations of authority on the family fiduciary issue in the
argument-and-authorities section of Rick=s
brief which addresses the limitations issue. 
Although we do not address the limitations issue, we will address the
family fiduciary issue.

The summary judgment evidence establishes as a
matter of law that no such fiduciary duty was breached, even if such a duty
existed.  The family took no action that
would have resulted in a breach of any fiduciary duty.  All of the issues in this case insofar as the
AStock Buyout Process and Formula@ and the merger are concerned involved
the inaction or the action of the board of directors of Warren Equipment, not
the Warren family.  It would have been
the board of directors that could bind Warren Equipment to any agreement regarding
the buyout of Rick=s stock,
not the Warren family.  It was Warren
Equipment, the owner of 100% of Holdings=s
stock, that took the action to merge 
Holdings into Warren Equipment, not the Warren family.

Further, there was no breach of any duty owed to
Rick as a minority stockholder.  While he
was a minority stockholder in Warren Equipment, he was not a minority
stockholder in Holdings, the corporation affected by the merger.  There were no minority shareholders in
Holdings.  Rick=s
arguments relating to fiduciary duties are overruled.

Rick also argues that the trial court erred in
granting appellees=
objections to his amended affidavit and in overruling his objections to certain
affidavits filed by appellees.  Appellees
objected to numerous statements in Rick=s
amended affidavit.  In its ruling on
appellees= motion
for summary judgment, the trial court sustained appellees= objections but did not rule upon Rick=s objections.  Rick has not given us record references, and
we can find none, where the trial court overruled his objections to appellees= affidavits. We need not rule upon
those issues.  See Tex. R. App. P. 33.1, 38.1.








We do consider Rick=s
issue regarding appellees=
objections to his amended affidavit.  We
review a trial court=s
rulings in admitting or excluding evidence under an abuse of discretion
standard.  Nat=l Liab. & Fire Ins. Co. v. Allen,
15 S.W.3d 525, 527 (Tex. 2000).  An
appellate court must uphold the trial court=s
evidentiary ruling if there is any legitimate basis in the record for the
ruling.  Owens‑Corning Fiberglas
Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  To be competent summary judgment evidence, an
affidavit must be based on personal knowledge, set forth facts admissible in
evidence, and affirmatively show the affiant=s
competency to testify as to the matters stated therein.  Tex.
R. Civ. P. 166a(f).  Unsupported
conclusory statements are not credible and are not susceptible to being readily
controverted and, as a result, are not proper summary judgment evidence.  Rizkallah v. Conner, 952 S.W.2d 580,
587 (Tex. App.CHouston
[1st Dist.] 1997, no writ).  After
reviewing the complained of statements, Rick did not establish that the trial
court abused its discretion in sustaining appellees=
objections to the amended affidavit.

Even if we were to assume that the trial court
erred in its evidentiary rulings, such rulings are not such as would cause us
to conclude that the errors probably caused the rendition of an improper
judgment.  Tex. R. App. P. 44.1(a). 
The statements relate to the existence of fiduciary duties owed by
Warren Equipment or the family and to damages as a result of the breach of
those duties.  We have held that,even if
such duties existed, the summary judgment evidence conclusively established
that no breach occurred.  We overrule
issue (j).

The judgment of the trial court is affirmed.

 

JIM R. WRIGHT

CHIEF JUSTICE

 

February 16, 2006

Panel consists of:  Wright,
C.J., and McCall, J.

W. G. Arnot III retired effective July 31, 2005, and is,
therefore, not participating.











     [1]Rick
makes no arguments on appeal concerning CSI.





     [2]Johnny
died and Carole later remarried.





     [3]On
May 10, 1999, Rick and Warren Equipment, under Johnny=s signature, entered into an agreement whereby Rick
would transfer 2,670 shares of Warren Equipment stock back to Warren Equipment.  This is not the stock that is involved in
this appeal.  Rick received the sum of
$349,461.26 for the stock.

 





     [4]In
his deposition, Rick states that the family members present at the meeting were
his parents, three adult Warren children, and their respective spouses.





     [5]Del. Code Ann. tit. 8, ' 251 (the long-form merger statute) provides that
notice of the merger is to be given to the shareholders and that the notice
contain certain detailed information regarding the merger.  The statute further provides for a
shareholder vote upon the merger.