Morris I. GLASSMAN and William
Steiner, Plaintiffs Below,
Appellants,

v.

UNOCAL EXPLORATION CORPORA-
TION, Unocal Corporation, John W.
Amerman, Roger C. Beach, Mac-
Donald G. Becket, Claude S. Brinegar,
Malcolm R. Currie, Richard K. Eam-
er, Frank C. Herringer, John F. Imle,
Jr., Donald P. Jacobs, Ann McLaugh-
lin, Neal E. Schmale, Thomas B. Slee-
man, Richard J. Stegemeier, and
Charles R. Weaver, Defendants Below,
Appellees.

In re Unocal Exploration Corporation
Shareholders Litigation.

No. 390, 2000.

Supreme Court of Delaware.

Submitted: April 3, 2001.

Decided: July 25, 2001.

R. Bruce McNew, Esquire (argued), of
Taylor & McNew, LLP, Greenville, Dela-
ware, and Pamela S. Tikellis, Esquire,
Robert J. Kriner, Jr., Esquire, and Timo-
thy R. Dudderar, Esquire, of Chimicles &

Tikellis, LLP, Wilmington, Delaware, for Appellants.

Kenneth J. Nachbar, Esquire (argued) and Jon E. Abramczyk, Esquire, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for Appellees Unocal Corporation, John W. Amerman, Roger C. Beach, Claude S. Brinegar, Malcolm R. Currie, Richard K. Eamer, Frank C. Herringer, John F. Imle, Jr., Donald P. Jacobs, Neal E. Schmale, Thomas B. Sleeman and Richard J. Stegemeier; and Brett D. Fallon, Esquire, of Morris, James, Hitchens & Williams, Wilmington, Delaware, for Appellees Unocal Exploration Corporation, MacDonald G. Becket, Ann McLaughlin and Charles R. Weaver.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court en Banc.

BERGER, Justice.

In this appeal, we consider the fiduciary duties owed by a parent corporation to the subsidiary's minority stockholders in the context of a "short-form" merger. Specifically, we take this opportunity to reconcile a fiduciary's seemingly absolute duty to establish the entire fairness of any self-dealing transaction with the less demanding requirements of the short-form merger statute. The statute authorizes the elimination of minority stockholders by a summary process that does not involve the "fair dealing" component of entire fairness. Indeed, the statute does not contemplate any "dealing" at all. Thus, a parent corporation cannot satisfy the entire fairness standard if it follows the terms of the short-form merger statute without more.

Unocal Corporation addressed this dilemma by establishing a special negotiating committee and engaging in a process that it believed would pass muster under traditional entire fairness review. We find that such steps were unnecessary. By enacting a statute that authorizes the elimination of the minority without notice, vote, or other traditional indicia of procedural fairness, the General Assembly effectively circumscribed the parent corporation's obligations to the minority in a short-form merger. The parent corporation does not have to establish entire fairness, and, absent fraud or illegality, the only recourse for a minority stockholder who is dissatisfied with the merger consideration is appraisal.

I. Factual and Procedural Background

Unocal Corporation is an earth resources company primarily engaged in the exploration for and production of crude oil and natural gas. At the time of the merger at issue, Unocal owned approximately 96% of the stock of Unocal Exploration Corporation ("UXC"), an oil and gas company operating in and around the Gulf of Mexico. In 1991, low natural gas prices caused a drop in both companies' revenues and earnings. Unocal investigated areas of possible cost savings and decided that, by eliminating the UXC minority, it would reduce taxes and overhead expenses.

In December 1991 the boards of Unocal and UXC appointed special committees to consider a possible merger. The UXC committee consisted of three directors who, although also directors of Unocal, were not officers or employees of the parent company. The UXC committee retained financial and legal advisors and met four times before agreeing to a merger exchange ratio of .54 shares of Unocal stock for each share of UXC. Unocal and UXC announced the merger on February 24, 1992, and it was effected, pursuant to 8 *Del. C.* § 253, on May 2, 1992. The Notice of Merger and Prospectus stated the terms of the merger and advised the for-

mer UXC stockholders of their appraisal rights.

Plaintiffs filed this class action, on behalf of UXC's minority stockholders, on the day the merger was announced. They asserted, among other claims, that Unocal and its directors breached their fiduciary duties of entire fairness and full disclosure. The Court of Chancery conducted a two day trial and held that: (i) the Prospectus did not contain any material misstatements or omissions; (ii) the entire fairness standard does not control in a short-form merger; and (iii) plaintiffs' exclusive remedy in this case was appraisal. The decision of the Court of Chancery is affirmed.

## II.  Discussion

The short-form merger statute, as enacted in 1937, authorized a parent corporation to merge with its wholly-owned subsidiary by filing and recording a certificate evidencing the parent's ownership and its merger resolution. In 1957, the statute was expanded to include parent/subsidiary mergers where the parent company owns at least 90% of the stock of the subsidiary. The 1957 amendment also made it possible, for the first time and only in a short-form merger, to pay the minority cash for their shares, thereby eliminating their ownership interest in the company. In its current form, which has not changed significantly since 1957, 8 *Del. C.* § 253 provides in relevant part:

> (a) In any case in which at least 90 percent of the outstanding shares of each class of the stock of a corporation... is owned by another corporation..., the corporation having such stock ownership may ... merge the other corporation ... into itself... by executing, acknowledging and filing, in accordance with § 103 of this title, a certificate of such ownership and merger setting forth a copy of the resolution of its board of directors to so merge and the date of the adoption; provided, however, that in case the parent corporation shall not own all the outstanding stock of ... the subsidiary corporation[ ],... the resolution ...shall state the terms and conditions of the merger, including the securities, cash, property or rights to be issued, paid delivered or granted by the surviving corporation upon surrender of each share of the subsidiary corporation....

> \* \* \*

> (d) In the event that all of the stock of a subsidiary Delaware corporation ... is not owned by the parent corporation immediately prior to the merger, the stockholders of the subsidiary Delaware corporation party to the merger shall have appraisal rights as set forth in Section 262 of this Title.

This Court first reviewed § 253 in *Coyne v. Park & Tilford Distillers Corporation.*[1] There, minority stockholders of the merged-out subsidiary argued that the statute could not mean what it says because Delaware law "never has permitted, and does not now permit, the payment of cash for whole shares surrendered in a merger and the consequent expulsion of a stockholder from the enterprise in which he has invested."[2] The *Coyne* court held that § 253 plainly does permit such a result and that the statute is constitutional.

The next question presented to this Court was whether any equitable relief is available to minority stockholders who object to a short-form merger. In *Stauffer v. Standard Brands Incorporated,*[3] minori-

---

1.  Del.Supr., 154 A.2d 893 (1959).

2.  *Id.* at 895.

3.  Del.Supr., 187 A.2d 78 (1962).

ty stockholders sued to set aside the contested merger or, in the alternative, for damages. They alleged that the merger consideration was so grossly inadequate as to constitute constructive fraud and that Standard Brands breached its fiduciary duty to the minority by failing to set a fair price for their stock. The Court of Chancery held that appraisal was the stockholders' exclusive remedy, and dismissed the complaint. This Court affirmed, but explained that appraisal would not be the exclusive remedy in a short-form merger tainted by fraud or illegality:

> [T]he exception [to appraisal's exclusivity] ... refers generally to all mergers, and is nothing but a reaffirmation of the ever-present power of equity to deal with illegality or fraud. But it has no bearing here. No illegality or overreaching is shown. The dispute reduces to nothing but a difference of opinion as to value. Indeed it is difficult to imagine a case under the short merger statute in which there could be such actual fraud as would entitle a minority to set aside the merger. This is so because the very purpose of the statute is to provide the parent corporation with a means of eliminating the minority shareholder's interest in the enterprise. Thereafter the former stockholder has only a monetary claim.[4]

The *Stauffer* doctrine's viability rose and fell over the next four decades. Its holding on the exclusivity of appraisal took on added significance in 1967, when the long-form merger statute— § 251—was amended to allow cash-out mergers. In *David J. Greene & Co. v. Schenley Industries, Inc.*,[5] the Court of Chancery applied *Stauffer* to a long-form cash-out merger. *Schenley*

recognized that the corporate fiduciaries had to establish entire fairness, but concluded that fair value was the plaintiff's only real concern and that appraisal was an adequate remedy. The court explained:

> While a court of equity should stand ready to prevent corporate fraud and any overreaching by fiduciaries of the rights of stockholders, by the same token this Court should not impede the consummation of an orderly merger under the Delaware statutes, an efficient and fair method having been furnished which permits a judicially protected withdrawal from a merger by a disgruntled stockholder.[6]

In 1977, this Court started retreating from *Stauffer* (and *Schenley*). *Singer v. Magnavox Co.*[7] held that a controlling stockholder breaches its fiduciary duty if it effects a cash-out merger under § 251 for the sole purpose of eliminating the minority stockholders. The *Singer* court distinguished *Stauffer* as being a case where the only complaint was about the value of the converted shares. Nonetheless, the Court cautioned:

> [T]he fiduciary obligation of the majority to the minority stockholders remains and proof of a purpose, other than such freeze-out, without more, will not necessarily discharge it. In such case the Court will scrutinize the circumstances for compliance with the *Sterling [v. Mayflower Hotel Corp.*, Del.Supr., 93 A.2d 107 (1952)] rule of "entire fairness" and, if it finds a violation thereof, will grant such relief as equity may require. Any statement in *Stauffer* inconsistent herewith is held inapplicable to a § 251 merger.[8]

---

4. 187 A.2d at 80.

5. Del.Ch., 281 A.2d 30 (1971).

6. *Id.* at 36. (Citations omitted.)

7. Del.Supr., 380 A.2d 969 (1977).

8. 380 A.2d at 980.

*Singer's* business purpose test was extended to short-form mergers two years later in *Roland International Corporation v. Najjar.*[9] The *Roland* majority wrote:

The short form permitted by § 253 does simplify the steps necessary to effect a merger, and does give a parent corporation some certainty as to result and control as to timing. But we find nothing magic about a 90% ownership of outstanding shares which would eliminate the fiduciary duty owed by the majority to the minority.

* * *

As to *Stauffer,* we agree that the purpose of § 253 is to provide the parent with a means of eliminating minority shareholders in the subsidiary but, as we observed in *Singer,* we did "not read the decision [*Stauffer*] as approving a merger accomplished solely to freeze-out the minority without a valid business purpose." We held that any statement in *Stauffer* inconsistent with the principles restated in *Singer* was inapplicable to a § 251 merger. Here we hold that the principles announced in *Singer* with respect to a § 251 merger apply to a § 253 merger. It follows that any statement in *Stauffer* inconsistent with that holding is overruled.[10]

After *Roland,* there was not much of *Stauffer* that safely could be considered good law. But that changed in 1983, in *Weinberger v. UOP, Inc.,*[11] when the Court dropped the business purpose test, made appraisal a more adequate remedy, and

said that it was "return[ing] to the well established principles of *Stauffer* ... and *Schenley* ... mandating a stockholder's recourse to the basic remedy of an appraisal."[12] *Weinberger* focused on two subjects—the "unflinching" duty of entire fairness owed by self-dealing fiduciaries, and the "more liberalized appraisal" it established.

With respect to entire fairness, the Court explained that the concept includes fair dealing (how the transaction was timed, initiated, structured, negotiated, disclosed and approved) and fair price (all elements of value); and that the test for fairness is not bifurcated. On the subject of appraisal, the Court made several important statements: (i) courts may consider "proof of value by any techniques or methods which are generally considered acceptable in the financial community and otherwise admissible in court....;"[13] (ii) fair value must be based on "all relevant factors," which include not only "elements of future value ... which are known or susceptible of proof as of the date of the merger"[14] but also, when the court finds it appropriate, "damages, resulting from the taking, which the stockholders sustain as a class;"[15] and (iii) "a plaintiff's monetary remedy ordinarily should be confined to the more liberalized appraisal proceeding herein established...."[16]

By referencing both *Stauffer* and *Schenley,* one might have thought that the *Weinberger* court intended appraisal to be the exclusive remedy "ordinarily" in non-

9. Del.Supr., 407 A.2d 1032 (1979).

10. 407 A.2d at 1036 (Citations omitted). Justice Quillen dissented, saying that the majority created "an unnecessary damage forum" for a plaintiff whose complaint demonstrated that appraisal would have been an adequate remedy. *Id.* at 1039–40.

11. Del.Supr., 457 A.2d 701 (1983).

12. *Id.* at 715.

13. *Id.* at 713.

14. *Ibid.*

15. *Ibid.*

16. *Id.* at 714.

fraudulent mergers where "price ... [is] the preponderant consideration outweighing other features of the merger." [17] In *Rabkin v. Philip A. Hunt Chemical Corp.*,[18] however, the Court dispelled that view. The *Rabkin* plaintiffs claimed that the majority stockholder breached its fiduciary duty of fair dealing by waiting until a one year commitment to pay $25 per share had expired before effecting a cash-out merger at $20 per share. The Court of Chancery dismissed the complaint, reasoning that, under *Weinberger*, plaintiffs could obtain full relief for the alleged unfair dealing in an appraisal proceeding. This Court reversed, holding that the trial court read *Weinberger* too narrowly and that appraisal is the exclusive remedy only if stockholders' complaints are limited to "judgmental factors of valuation." [19]

*Rabkin*, through its interpretation of *Weinberger*, effectively eliminated appraisal as the exclusive remedy for any claim alleging breach of the duty of entire fairness. But *Rabkin* involved a long-form merger, and the Court did not discuss, in that case or any others, how its refinement of *Weinberger* impacted short-form mergers. Two of this Court's more recent decisions that arguably touch on the subject are *Bershad v. Curtiss-Wright Corp.*[20] and *Kahn v. Lynch Communication Systems, Inc.*,[21] both long-form merger cases. In *Bershad*, the Court included § 253 when it identified statutory merger provisions from which fairness issues flow:

> In parent-subsidiary merger transactions the issues are those of fairness—fair price and fair dealing. These flow from the statutory provisions permitting

mergers, 8 *Del.C.* §§ 251–253 (1983), and those designed to ensure fair value by an appraisal, 8 *Del.C.* § 262 (1983)...;" [22]

and in *Lynch*, the Court described entire fairness as the "exclusive" standard of review in a cash-out, parent/subsidiary merger.[23]

■ Mindful of this history, we must decide whether a minority stockholder may challenge a short-form merger by seeking equitable relief through an entire fairness claim. Under settled principles, a parent corporation and its directors undertaking a short-form merger are self-dealing fiduciaries who should be required to establish entire fairness, including fair dealing and fair price. The problem is that § 253 authorizes a summary procedure that is inconsistent with any reasonable notion of fair dealing. In a short-form merger, there is no agreement of merger negotiated by two companies; there is only a unilateral act—a decision by the parent company that its 90% owned subsidiary shall no longer exist as a separate entity. The minority stockholders receive no advance notice of the merger; their directors do not consider or approve it; and there is no vote. Those who object are given the right to obtain fair value for their shares through appraisal.

The equitable claim plainly conflicts with the statute. If a corporate fiduciary follows the truncated process authorized by § 253, it will not be able to establish the fair dealing prong of entire fairness. If, instead, the corporate fiduciary sets up negotiating committees, hires independent

**17.** *Id.* at 711.

**18.** Del.Supr., 498 A.2d 1099 (1985).

**19.** 498 A.2d at 1108.

**20.** Del.Supr., 535 A.2d 840 (1987).

**21.** Del.Supr., 638 A.2d 1110 (1994).

**22.** 535 A.2d at 845.

**23.** 638 A.2d at 1117.

financial and legal experts, etc., then it will have lost the very benefit provided by the statute—a simple, fast and inexpensive process for accomplishing a merger. We resolve this conflict by giving effect the intent of the General Assembly.[24] In order to serve its purpose, § 253 must be construed to obviate the requirement to establish entire fairness.[25]

Thus, we again return to *Stauffer*, and hold that, absent fraud or illegality, appraisal is the exclusive remedy available to a minority stockholder who objects to a short-form merger. In doing so, we also reaffirm *Weinberger's* statements about the scope of appraisal. The determination of fair value must be based on *all* relevant factors, including damages and elements of future value, where appropriate. So, for example, if the merger was timed to take advantage of a depressed market, or a low point in the company's cyclical earnings, or to precede an anticipated positive development, the appraised value may be adjusted to account for those factors. We recognize that these are the types of issues frequently raised in entire fairness claims, and we have held that claims for unfair dealing cannot be litigated in an appraisal.[26] But our prior holdings simply explained that equitable claims may not be engrafted onto a statutory appraisal proceeding; stockholders may not receive rescissionary relief in an appraisal. Those decisions should not be read to restrict the elements of value that

properly may be considered in an appraisal.

Although fiduciaries are not required to establish entire fairness in a short-form merger, the duty of full disclosure remains, in the context of this request for stockholder action.[27] Where the only choice for the minority stockholders is whether to accept the merger consideration or seek appraisal, they must be given all the factual information that is material to that decision.[28] The Court of Chancery carefully considered plaintiffs' disclosure claims and applied settled law in rejecting them. We affirm this aspect of the appeal on the basis of the trial court's decision.[29]

## III. Conclusion

Based on the foregoing, we affirm the Court of Chancery and hold that plaintiffs' only remedy in connection with the short-form merger of UXC into Unocal was appraisal.

---

**24.** *Klotz v. Warner Communications, Inc.*, Del. Supr., 674 A.2d 878, 879 (1995).

**25.** We do not read *Lynch* as holding otherwise; this issue was not before the Court in *Lynch*.

**26.** *Alabama By–Products Corporation v. Neal*, Del.Supr., 588 A.2d 255, 257 (1991).

**27.** *See: Malone v. Brincat*, Del.Supr., 722 A.2d 5 (1998) (No stockholder action was

requested, but Court recognized that even in such a case, directors breach duty of loyalty and good faith by knowingly disseminating false information to stockholders.)

**28.** *McMullin v. Beran*, Del.Supr., 765 A.2d 910 (2000).

**29.** *In Re Unocal Exploration Corporation Shareholders Litigation*, Del.Ch., 2001 WL 823376 (2000).