# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE UNITED CAPITAL CORP., | ) | CONSOLIDATED |
| STOCKHOLDERS LITIGATION | ) | C.A. No. 11619-VCMR |

## MEMORANDUM OPINION

Date Submitted: October 5, 2016
Date Decided: January 4, 2016

Seth D. Rigrodsky, Brian D. Long, Gina M. Serra, and Jeremy J. Riley, RIGRODSKY & LONG, P.A., Wilmington, Delaware; Donald J. Enright and Elizabeth K. Tripodi, LEVI & KORSINSKY LLP, Washington, D.C.; *Attorneys for Plaintiff.*

Bruce L. Silverstein and James M. Yoch, Jr., YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware; *Attorneys for Defendants.*

**MONTGOMERY-REEVES, Vice Chancellor.**

The plaintiff in this action seeks a quasi-appraisal to remedy purported breaches of the duty of disclosure in connection with a short-form merger. The plaintiff alleges the pertinent notice of merger does not properly disclose the controller's reasoning behind the merger price, the special committee's process, financial projections used to determine the value of the company, information regarding the working capital and future use of cash of the company, the lack of independence of two members of the special committee, and the identities of two directors and a director's spouse who participated in a multi-million dollar note with the company.

Defendants move to dismiss the complaint on the grounds that all material information is disclosed in the notice and, in the realm of a short-form merger, any omitted information is not material to the decision at hand—whether the minority stockholders should accept the merger consideration or seek appraisal. This memorandum opinion grants the motion to dismiss because the plaintiff does not allege adequately that the omitted information is material to the decision to seek appraisal and the duty of disclosure was not violated. Therefore, the only remedy available to the minority stockholders is appraisal.

1

## I. BACKGROUND

The facts are drawn from the Verified Class Action Complaint (the "Complaint") and the documents incorporated by reference therein.

### A. Parties

Lead Plaintiff Louis B. Geser ("Plaintiff") owned shares of common stock in United Capital Corporation ("United Capital" or the "Company"). Defendant United Capital is a Delaware corporation with offices in Great Neck, New York. United Capital invests in and manages real estate and manufactures engineered products. United Capital has not been required to file any periodic reports with the United States Securities and Exchange Commission ("SEC") since 2011, nor has it provided informal public disclosures about operations or financial results since December 21, 2013.

Defendant A.F. Petrocelli is Chairman of the Board, President, and Chief Executive Officer of United Capital. Petrocelli owned approximately 94% of the outstanding shares of United Capital before the transaction at issue. Petrocelli also is a lead independent director of Nathan's Famous, Inc. ("Nathan's"), a director of Philips International Realty ("Philips"), and a board member of Prime Hospitality Group ("Prime").

Defendant Howard Lorber is a director of United Capital, Prime, and Nathan's. Lorber also partially owns Hallman & Lorber Associates, Inc. ("H&L"),

2

which provided pension plan services to United Capital during the 2010 fiscal year for $20,000. H&L may have an ongoing relationship with United Capital.

Defendant Arnold Penner is a director of United Capital and Philips. Defendant Anthony J. Miceli is a director, Vice President, and Chief Financial Officer of United Capital. Defendants Michael T. Lamoretti and Michael J. Weinbaum are directors and Vice Presidents in real estate operations for the Company. Defendant Robert Mann is a director of United Capital. (Petrocelli, Lorber, Penner, Miceli, Lamoretti, Weinbaum, and Mann, collectively, the "Board"; the Board and United Capital, collectively, "Defendants").

### B. Facts

On June 22, 2015, Petrocelli submitted an initial bid letter to the Board offering to purchase the minority shares of the Company for $30 per share. On June 23, 2015, and July 27, 2015, the Board resolved to form a special committee consisting of Lorber, Mann, and Penner (the "Special Committee"). The Special Committee had the power to:

> act independently including: (i) the ability to engage independent legal, financial and other advisors at the Company's expense; (ii) direct access to management and the Company's regular outside counsel and other advisors; and (iii) the power to reject the proposed transaction and

to exercise arm's length bargaining power with Mr. Petrocelli.[1]

On August 5, 2015, the Special Committee met and decided not to retain advisors, other than legal counsel, to assist in its evaluation. On August 12, 2015, the Special Committee met and reviewed "financial and other information provided by the Company," concluded that the initial bid amount was insufficient, and countered Petrocelli at $35 per share.[2] Petrocelli then offered $31 per share. On August 18, 2015, the Special Committee met and proposed a $33 counteroffer to Petrocelli. Petrocelli responded with a "final and best offer of $32 per share."[3] On August 19, 2015, the Special Committee approved the proposed merger and determined that "it was fair and in the best interests of the Company and its stockholders."[4]

On August 24, 2015, United Capital entered into an Agreement and Plan of Merger (the "Merger Agreement") with A.F. Petrocelli LLC, a Delaware limited liability company, ("Parent") and A.F. Petrocelli Acquisition Co., a Delaware corporation and wholly-owned subsidiary of Parent ("Merger Sub"). Petrocelli

---

[1]     Compl. ¶ 29.

[2]     *Id.* ¶ 31.

[3]     *Id.* ¶ 33.

[4]     *Id.*

4

transferred his 94% stock interests in United Capital to Merger Sub. On the date the merger was announced, United Capital stock was trading at $39 per share.

On September 3, 2015, Plaintiff received written notice of the merger from United Capital (the "Notice"), which includes, among other things, financial statements for 2013, 2014, and 2015, management's analysis of the Company's financial status, the background of the merger, and potential Board and Special Committee conflicts. The merger was effective on September 30, 2015, with United Capital as the surviving entity. Petrocelli became the sole stockholder of United Capital.

### C. Procedural History

On October 16, 2015, Geser filed the Complaint on behalf of the public minority stockholders of United Capital. On October 28, 2015, Solomon Margolis filed a class action complaint arising out of the same transaction. On December 8, 2015, Geser moved to consolidate both actions and sought appointment of himself as lead plaintiff, Levi & Korsinsky LLP as lead counsel, and Rigrodsky & Long, P.A. as liaison counsel. On December 9, 2015, Margolis moved to consolidate both actions and sought appointment of himself as lead plaintiff, Pomerantz LLP as lead counsel, and Montgomery McCracken Walker & Rhoads LLP as liaison counsel. On February 9, 2016, I appointed Geser as lead plaintiff and his counsel as lead and liaison counsel, and designated his complaint as the operative complaint. Thereafter,

5

the parties briefed Defendants' motion to dismiss the Complaint ("Motion to Dismiss"), and on October 5, 2016, I held oral argument.

## II.    ANALYSIS

### A.    Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim, [and] draw all reasonable inferences in favor of the plaintiff."[5] The Court may only grant the motion if plaintiff cannot recover under "any reasonably conceivable set of circumstances susceptible of proof."[6]

When a transaction occurs under 8 *Del. C.* § 253, "the parent corporation does not have to establish entire fairness."[7] Instead, "absent fraud or illegality, the only recourse for a minority stockholder who is dissatisfied with the merger consideration is appraisal."[8] "Although fiduciaries are not required to establish entire fairness in a short-form merger, the duty of full disclosure remains, in the context of this request

---

[5]    *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (footnote omitted).

[6]    *Id.*

[7]    *Glassman v. Unocal Expl. Corp.*, 777 A.2d 242, 243 (Del. 2001).

[8]    *Id.*

6

for stockholder action."[9]  Specifically, the company must notify the minority of the availability of appraisal rights and include a correct copy of the appraisal statute.[10] Additionally, disclosure of the "information material to the decision of whether or not to seek appraisal is required"; however, "[t]he parent need not provide *all* the information necessary for the stockholder to reach an independent determination of fair value."[11]  Information is material if there is "a substantial likelihood that the undisclosed information would significantly alter the total mix of information already provided."[12]  "[O]mitted facts are not material simply because they might be helpful."[13]  A "disclosure violation results in an irreparable injury," which may be remedied through "quasi-appraisal."[14]

---

[9]     *Id.* at 248.

[10]    8 *Del. C.* § 262(d)(2).

[11]    *In re Unocal Expl. Corp.*, 793 A.2d 329, 352 (Del. Ch. 2000), *aff'd, Glassman*, 777 A.2d 242.

[12]    *Berger v. Pubco Corp.*, 2008 WL 2224107, at *3 (Del. Ch. May 30, 2008) (quoting *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000)), *rev'd on other grounds,* 976 A.2d 132 (Del. 2009).

[13]    *Id.*

[14]    *Id.* at *4.

**B.** **The Notice Contains the Requisite Information for Stockholders to Decide Whether to Seek Appraisal**

The eighty-page Notice in this case provides comprehensive information regarding the business and financials of the Company. The Notice contains an in-depth discussion of the three business segments: real estate investments, hotel operations, and engineered products. The Notice details (1) the types of real estate investments owned and managed by United Capital and the net lease arrangements of these properties, (2) the hotels' sizes, locations, and management structures, and (3) the types of products, lines of distribution, brands, and industry markets for the engineered products.[15] The Notice includes a three-page single-spaced summary of the background of the merger and how the merger price was established, including a discussion of the Special Committee's and Board's processes for considering and approving the merger.[16] The Notice also provides (1) historical stock purchases since 2012, (2) audited, consolidated financial statements for years 2013 and 2014, (3) unaudited, consolidated financial statements for the six-month period ending in June 2015, (4) notes to the financial statements which detail United Capital's operations, income, and overall financials, (5) seven single-spaced pages of management's analysis of the business's financial results for the year 2014 and the

---

[15]    Notice 2-3.

[16]    *Id.* at 5-7.

8

six months ended on June 30, 2015, and (6) disclosure of possible Board and Special Committee conflicts.[17]

In fact, relying primarily on the Notice, Plaintiff determines that the merger consideration is inadequate. Plaintiff uses the financial statements attached to the Notice to decide that the merger price's $186.6 million implied total equity value significantly undervalues the Company due to the $98 million in cash on hand in June 2015 (worth nearly $17 per share), the total assets of $342.4 million (nearly twice the implied equity value), and the improvement of the Company between 2013 and 2014 (total assets increased by over $50 million, total revenues increased from $119.1 million to $128.3 million, and net income increased from $12.5 million to $13.3 million).[18] Thus, Plaintiff's allegations suggest that the Notice's financial disclosures give Plaintiff the minimum information necessary to determine whether he could "trust that the price offered is good enough," or whether the price undervalued the Company "so significantly that appraisal is a worthwhile endeavor."[19]

---

[17] *See id.* at 2-7, 11, Ex. B, Ex. C.

[18] Compl. ¶¶ 40-44.

[19] *Berger*, 2008 WL 2224107, at *3.

9

Nevertheless, Plaintiff identifies numerous omitted facts he deems material. Specifically, he points to the exclusion of (1) the information used by the Special Committee to set the $32 per share merger price, (2) Petrocelli's rationale for his original offer, (3) specific financial information, including projections, (4) the extent to which cash and cash equivalents were working capital, (5) potential conflicts of two of the three purportedly independent members of the Special Committee, and (6) the identities of certain directors and a director's spouse who jointly owned an $8 million note with the Company. But, none of Plaintiff's alleged omissions are material to the decision of whether to seek appraisal in light of the abundant disclosures already provided.

### 1.    The Notice discloses the necessary information regarding the Special Committee's determination of a fair price

Plaintiff argues the Notice should have discussed the specific "financial and other information" the Special Committee used in its deliberations to determine that the $32 per share price was fair, especially given the absence of a fairness opinion or independent outside valuation and the disparity between the stock's most recent $39 per share public trading price, the $40 per share high in the year before the merger, and the $32 merger price.[20]

---

[20]    Pl.'s Answering Br. 14-16.

Here, the Notice discloses comprehensive information regarding the Special Committee, the negotiating process, and the Board's consideration of numerous factors in determining that the merger price was fair.[21] United Capital discloses that the Board set up a Special Committee with full power to act independently, and the Special Committee hired counsel and reviewed Petrocelli's offer.[22] The Notice discloses that the Special Committee "analyzed whether to retain financial or other advisors to assist the Special Committee in its evaluation and concluded such advisors were not necessary."[23] The Special Committee then obtained "financial and other information" from the Company.[24] The Notice details the various meetings of the Special Committee and the Special Committee's consideration of:

> the benefits of the proposed merger to the Company and the minority stockholders, including that, (i) there is limited public information about the Company available to stockholders and (ii) the Common Stock was thinly traded and illiquid. The Special Committee determined that allowing minority stockholders to realize fair value of their stock through the short form merger process would be in the best interests of the minority stockholders.[25]

---

[21]     Notice 5-7.

[22]     *Id.* at 5.

[23]     *Id.* at 6.

[24]     *Id.*

[25]     *Id.*

11

The Notice describes that in connection with these meetings, the Special Committee evaluated Petrocelli's offers and proposed changes to both the price and substantive terms of the merger agreement.[26] In addition to the detailed disclosure of the back and forth between the Special Committee and Petrocelli, the Notice also includes robust financial statements to allow stockholders to make their decision about whether or not to seek appraisal.[27]

These disclosures are sufficient.[28] The Notice gives a sense of whether the number was arbitrarily "picked out of a hat" or was based on some concrete evidence, and divulges that a negotiating committee was set up, but that it did not rely on outside experts.[29] Plaintiff fails to convince me that disclosure of the Committee's explicit use of certain financial information would substantially alter the "total mix" of information available to the stockholders.

### 2. The Notice adequately discloses Petrocelli's reasoning behind his offer price

Plaintiff claims the Notice fails to give Petrocelli's rationale for how he set the merger price, and that such information is material to determining whether or not

---

[26]  *Id.* at 6-7.

[27]  *Id.* at 6-7, Ex. B.

[28]  *Berger v. Pubco Corp.*, 2008 WL 2224107, at *3 (Del. Ch. May 30, 2008).

[29]  *See id.*

12

to trust the price offered. Plaintiff cites to *Berger v. Pubco Corp.* as proof that omission of the method by which the controller sets the merger consideration is material.[30] In *Berger*, however, the notice contained almost no detail. There was no description of the company's actual operations, no breakdown of the company's finances by division or line of business, no discussion of cash utilization, no discussion of plans or prospects, and no discussion of how the controller determined the price.[31] The Notice contained a "scant five sentences" describing the company at issue, with one sentence merely stating "the [c]ompany owns other income generating assets."[32] The Court held that in a context where an unregistered company's "[n]otice was relatively terse and short on details, the method by which [the controller] set the merger consideration is a fact that is substantially likely to alter the total mix of information available to the minority stockholders."[33]

The Notice here discloses Petrocelli's rationale and includes relevant financial data to allow stockholders to determine whether the price "was set by arbitrarily rolling the dice."[34] It states that Petrocelli's rationale for his original offer was that

---

[30]     Pl.'s Answering Br. 17 (citing *Berger*, 2008 WL 2224107, at *3).

[31]     *Berger*, 2008 WL 2224107, at *1.

[32]     *Id.*

[33]     *Id.* at *3.

[34]     *Id.*; Notice 2-7, Ex. B.

13

"with uncertainty in the real estate, hotel and automotive industries and the state of the economy, a short-form merger provides certainty and liquidity to minority stockholders."[35] It gives the prices of stock buybacks from the Petrocelli family, the Company, and the open market in the three years before the merger—presumably information Petrocelli used to determine his offer price.[36] The Notice also discloses Petrocelli's extensive negotiations with the Special Committee.[37] Further, the Notice discusses the various segments of United Capital's business at length and provides significant historical, current, and forward-looking financial data.[38] And, the Notice explicitly states that no fairness opinion, report, or appraisal from an outside party was used to determine the value of the stock.[39] The Company did not need to provide "picayune details about the process [Petrocelli] used to set the

---

[35]     Notice 5.

[36]     *Id.* at 4 (stating that since the beginning of 2012, United Capital has purchased 1,506,769 shares of Company common stock (of which 1,477,200 were from family members of Petrocelli) at a price of $30 per share, 2,494 shares of Company common stock at a price of $31 per share, and 89,000 shares of common stock on the open market, with the highest price being $29.87 per share).

[37]     *Id.* at 5-7 (discussing the negotiation process, the details of Petrocelli's original offer, the Special Committee's counteroffer, Petrocelli's second offer, the Special Committee's second counteroffer, and Petrocelli's third and final offer, which the Special Committee ultimately accepts).

[38]     *Id.* at 4, Ex. B; *see also infra* Section II.B.3.

[39]     Notice 4.

14

price."[40]  Instead, the Company should have and did disclose "in a *broad sense* what that process was, assuming [Petrocelli] followed a process at all and did not simply choose a number randomly."[41]  Given the information disclosed regarding the entire negotiation process, as well as the Company's business and finances, Plaintiff fails to convince me that understanding exactly how Petrocelli came up with his initial offer price would significantly alter the "total mix" of information available under these circumstances.

### 3.    The Notice provides sufficient financial data

Plaintiff argues that the Notice fails to disclose any financial projections, and any purportedly forward-looking information does not provide an accurate view of the Company's future, rendering the Notice materially deficient.[42]  Plaintiff further contends that the existence of the forward-looking information allows for the inference that financial projections did exist and were given to the Special Committee, but were withheld from the minority stockholders.[43]

---

[40]    *Berger v. Pubco Corp.*, 2008 WL 2224107, at *3 (Del. Ch. May 30, 2008).

[41]    *Id.* (emphasis added)

[42]    Pl.'s Answering Br. 19-20.

[43]    *Id.*

15

Plaintiff points to the Court's decision in *Erickson v. Centennial Beauregard Cellular, L.L.C.* for the proposition that financial projections are material in the context of a short-form merger.[44] In *Erickson*, a case also involving a non-public company, the only financial information provided to the stockholders was a one-and-a-half-page valuation based upon a single calculation of EBITDA over an unidentified period of time.[45] While the Court stated that even in the short-form merger context, "some indication of business revenue projections is still necessary," the parent in that case had provided "meager information" that "was so devoid of substantive current and future data that it cannot realistically be said to have encompassed management's view of the future of the company."[46]

United Capital has provided much more financial information, including current, historical, and forward-looking information. The current and historical information includes, among other things, (1) audited, consolidated financial statements for the years 2013 and 2014, (2) unaudited, consolidated financial statements for six-month period ending in June 2015, (3) management's detailed analysis of the financials for the year 2014 and the six-month period ending in June

---

[44]    *Id.* at 20 (citing *Erickson v. Centennial Beauregard Cellular, L.L.C.*, 2003 WL 1878583 (Del. Ch. Apr. 11, 2003)).

[45]    *Erickson*, 2003 WL 1878583, at *6.

[46]    *Id.* at *7.

16

2015, and (4) the prices of recent buybacks of shares.[47]   The forward-looking

financial information includes (1) future minimum rental revenues through the year

2019 and thereafter, (2) future pension benefit payments through the year 2024, (3)

future lease obligations through 2019 and thereafter, and (4) aggregate maturities on

mortgage obligations through the year 2019 and thereafter.[48]   Plaintiff argues that

the forward-looking information suggests United Capital had access to financial

projections, and Plaintiff infers that these projections were provided to the Special

Committee.[49]   But, Plaintiff provides no factual support for the assumption that

projections exist, and nothing in the Notice suggests that they exist.  "I reiterate this

Court's consistent position that 'management cannot disclose projections that do not

exist.'"[50]  Moreover, unlike in *Erickson*, where business revenue projections clearly

would have significantly altered the "total mix" of information given, as there was

---

[47]    Notice 4, Ex. B, Ex. C; *see supra* Section II.B.2.

[48]    Notice Ex. B, at F-12-22.

[49]    Pl.'s Answering Br. 19-20 (citing *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010); *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999)).

[50]    *In re BioClinica, Inc. S'holder Litig.*, 2013 WL 673736, at *5 (Del. Ch. Feb. 25, 2013) (quoting *In re CNX Gas Corp. S'holders Litig.*, 4 A.3d 397, 419 (Del. Ch. 2010)).

17

almost none, here, Plaintiff fails to allege how projections that may or may not exist would be material, given the breadth of financial data disclosed in the Notice.

### 4. The Notice appropriately discloses United Capital's cash, cash equivalents, and their future use

Plaintiff alleges that Defendants fail to disclose the extent to which United Capital's cash (or cash equivalents) was working capital or the Company's plans for utilizing the cash in its business plans.[51] The Notice, however, does disclose the extent to which cash is working capital, cash utilization (including various transactions and expenditures throughout 2013 and 2014), and forward-looking information.[52] Plaintiff fails to explain why any additional information would alter the "total mix" of information available, instead suggesting such information is helpful in performing an independent valuation of United Capital. An absent fact's mere helpfulness does not make that fact material, and regardless, in a short-form

---

[51] Compl. ¶ 55.

[52] Defs.' Opening Br. 41-44; *see* Notice Ex. B, at F-6, F-7, F-10, F-11, F-12, F-15, F-16, F-21, F-22, F-28, F-30, F-33, Ex. C, at 5; *see also Berger v. Pubco Corp.*, 2008 WL 2224107, at *4 (Del Ch. May 30, 2008) (holding that additional disclosures regarding the company's future plans with its cash and securities were not material because the financial disclosures revealed that the cash and securities were worth more than the merger consideration and allowed plaintiff to determine she did not trust the parent's valuation).

18

merger, the minority stockholders are not entitled to all facts material to their own valuation assessment.[53]

### 5. The Notice adequately discusses the independence of Lorber and Penner

Plaintiff claims the Notice does not disclose that "two of the three purportedly independent directors on the Special Committee have had long personal, professional, and financial ties with Petrocelli that call into question their ability to render their decision in an impartial manner,"[54] making the Notice materially misleading.[55] Specifically, Plaintiff alleges the material omissions relate to (1) Penner's "twenty year stint" on the board of Philips alongside Petrocelli, (2) Petrocelli's "twenty-three year service" on the board of Nathan's during which time Lorber held various management positions, and (3) Lorber's "business ties and financial interests" through H&L's "business dealings with Petrocelli."[56]

---

[53] *Berger*, 2008 WL 2224107, at \*3; *In re Unocal Expl. Corp.*, 793 A.2d 329, 352 (Del. Ch. 2000). Plaintiff relies on *In re Radiology Associates, Inc. Litigation* for the proposition that the disclosure of future use of cash is material because this is information "which will allow a shareholder to determine if he is receiving a fair price." Pl.'s Answering Br. 27 (quoting *In re Radiology Assocs., Inc. Litig.*, 1990 WL 67849, at \*11 (Del. Ch. May 16, 1990)). In *Radiology*, however, the Court made no determination as to whether information regarding the working capital of the company or the future plans for the cash and cash equivalents was material.

[54] Compl. ¶ 54.

[55] Pl.'s Answering Br. 23.

[56] *Id.* at 24.

19

In *In re Unocal Exploration Corp. Shareholders Litigation*, the Court held that "the committee's efforts should not be used as a basis for undermining the adequacy of the appraisal remedy,"[57] even where the special committee had divided loyalties to UXC and Unocal (UXC's 96% controlling stockholder), and the Court could not conclude that the committee "engaged in genuine, arm's-length negotiations."[58] Because the company disclosed the special committee's existence, each member's position as a dual director of Unocal and UXC, and a brief outline of the committee's efforts, the stockholders were given all of the information they needed to reach their decision about whether to seek appraisal.[59] Further, "Unocal did not encourage stockholders to rely centrally on the efforts of the Special Committee"; therefore, the stockholders "were not deceived into relying on the Special Committee to protect their interests."[60] The Notice, like the disclosures in *Unocal Exploration,* reveals the Special Committee's existence, outlines its negotiation process, discloses Lorber's and Penner's potential conflicts, provides

---

[57]   793 A.2d 329, 349 (Del. Ch. 2000) ("If Unocal, before acting unilaterally, conducted the minority-focused analysis performed by the Committee, plaintiffs clearly would fail to show fraud or illegality. That the Committee conducted the analysis in Unocal's stead does not change the result.").

[58]   *Id.* at 348 (quoting *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983)).

[59]   *Id.* at 355.

[60]   *Id.; but cf. infra* note 66.

20

financial and business information necessary to inform stockholders about whether to seek appraisal, and does not deceive stockholders into relying primarily on the Special Committee.[61]

Plaintiff attempts to distinguish this case from *Unocal Exploration* on the basis that the *Unocal Exploration* stockholders had the benefit of a financial advisor and a public, reporting company; thus, the stockholders had "all of the information they reasonably needed to reach their own conclusion about the utility of seeking appraisal."[62]   Plaintiff contends that in the present case, "stockholders were considering the value of a thinly-traded, unlisted, non-reporting company," did not have the benefit of a financial advisor's valuation, and were forced to decide whether to seek appraisal based on "limited and incomplete public information."[63]   But, the Notice does not mislead Plaintiff into believing the Special Committee relied on an outside valuation and explicitly states that no financial advisor was used.[64]

---

[61]     *See infra* Section II.B.6; Notice 4-7, Ex. B.

[62]     Pl.'s Answering Br. 25-26.

[63]     *Id.* at 26.

[64]     Notice 4.  In a short-form merger, there is no duty to provide a fairness opinion. *See Glassman v. Unocal Expl. Corp.*, 777 A.2d 242, 247-48 (Del. 2001) ("If, instead, the corporate fiduciary sets up negotiating committees, hires independent financial and legal experts, etc., then it will have lost the very benefit provided by the statute—a simple, fast and inexpensive process for accomplishing a merger.").

Additionally, Plaintiff admits that there is enough public information to "indicate that the consideration may be inadequate,"[65] and Plaintiff uses this information to determine he cannot trust the merger price. Thus, stockholders have all the information necessary to decide whether to seek appraisal.[66]

### 6. The Notice sufficiently discloses certain directors' potential conflicts

Plaintiff alleges that the Notice fails to disclose the identity of the directors and the director's wife who participated in an $8 million note secured by a New York hotel, or what is expected to occur upon the note's maturation.[67] Plaintiff

---

[65] Pl.'s Answering Br. 26.

[66] Plaintiff cites *Sonet v. Plum Creek Timber Co., L.P.* as support for the proposition that disclosures regarding the independence of the Special Committee are material. 1999 WL 160174 (Del. Ch. Mar. 18, 1999); Pl.'s Answering Br. 23-24. But, unlike in the present case, *Sonet* involved a special committee (1) that did not actually negotiate with the general partner, (2) where certain members did not see the committee as a negotiating body, and (3) where representatives of the general partner sat in on every committee meeting. *Sonet*, 1999 WL 160174, at *4, *6, *8. This was in direct contravention of the representations in the relevant disclosure documents, which explicitly stated that the committee "*negotiate[d] solely on behalf of the Unitholders to mitigate the conflict of interest.*" *Id.* at *8. Thus, the Court held the disclosures were materially misleading. *Id.*

[67] Compl. ¶ 56. The Notice states under a heading of "**Transactions with Related Parties**":

> The Company has an $8 [million] participation in a note secured by a hotel in New York. Also participating in this transaction is a group that includes the Company's Board Chairman, the wife of the Company's Board Chairman, two directors of the Company, the wife of one of the Directors, and the Company's pension plan, which, as a group, hold a 62.5%

22

suggests that the two director participants in the note are members of the Special Committee, and thus, material information about their conflicts has not been disclosed.

Plaintiff, however, ignores the immediately preceding paragraph contained in the "**Transactions with Related Parties**" section of the Notice, which discloses that Petrocelli's wife, Lorber, Penner, and Penner's wife own approximately eight percent of a limited liability corporation that owns two distribution centers leased to K-Mart.[68] The Company also owns fifty percent of the limited liability corporation.[69] The Special Committee's members' names are disclosed along with the potential conflicts. The subsequent paragraph discussing the $8 million note does not disclose the specific participants in the note, presumably because the note does not involve Special Committee members.[70] Further, as discussed above in Section II.B.5, potential conflicts regarding Lorber and Penner are disclosed, and

---

interest. The participation, which matures in November 2016, bears interest at 12.0% per annum payable monthly.

Notice Ex. B, at F-17.

[68] Notice Ex. B, at F-17.

[69] *Id.*

[70] Defendants have offered to produce documents proving that the involved participants are inside directors and an inside director's wife, "pursuant to an appropriate confidentiality agreement," and thus, not material to the Special Committee's independence. *See* Defs.' Reply Br. 28 n.12.

Plaintiff has knowledge of purported ties they had to Petrocelli.[71]  Plaintiff fails to allege how the inclusion of additional purported conflicts would alter the "total mix" of information provided.  Plaintiff also does not explain how information about the post-maturation expectations of the note are material to the decision of whether or not to seek appraisal in a short-form merger.

## III.  CONCLUSION

As Plaintiff has failed to allege fraud, illegality, or a disclosure violation, the sole remedy in challenging the short-form merger is appraisal.[72]  Thus, the motion to dismiss this class action complaint seeking a quasi-appraisal remedy is GRANTED.

**IT IS SO ORDERED.**

---

[71]     *See supra* Section II.B.5.

[72]     *Glassman v. Unocal Expl. Corp.*, 777 A.2d 242, 248 (Del. 2001).

24